## MARY M. LEE *v.* M. M. WILKINSON.

[62 South. 275.]

1. MORTGAGE. *Absolute deed treated as mortgage. Rights of parties. Appeal and error. Decree of Chancellor.*

    Unless the decision of a Chancellor on a question of fact is manifestly wrong it will be sustained by the supreme court on appeal.

2. ABSOLUTE DEED TREATED AS MORTGAGE. *Rights of parties.*

    Where the owner of land executed a warranty deed to a pawn broker, conveying her land as security for a loan amounting to a tenth or twentieth of its value and received from the

pawnbroker a pawn ticket which clearly evidenced the intention of the parties, in a suit by the grantor to cancel the deed the grantee is entitled only to the money loaned by him with interest at six per cent per annum less any amounts which may have been paid and the deed should be cancelled or a reconveyance ordered upon the payment of any balance found due.

APPEAL from the chancery court of Harrison county.
HON. T. A. WOOD, Chancellor.

Suit by Mary M. Lee against M. M. Wilkinson. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Mayes & Mayes,* for appellant.

The decision should be reversed.

1. The entire inadequacy between what this man claims to have paid for the property, being a sum of twenty-six dollars, and the value of the property, which is shown to be about four hundred dollars, shocks the conscience; itself is evidence of fraud, as this court held in the case decided last week of *Baldwyn* v. *Anderson.* In that case the inadequacy was in the proportion of three to one; in this case, it is in the proposition of more than fifteen to one.

2. The ignorance and want of education and the station in life occupied by this colored woman are such as to make her an easy victim, and this is a pregnant circumstance which the court will look to in weighing the transaction between these two parties which turned out so disastrously for her. A shrewd white man engaged in the pawnbroker's and the loan shark business, on the one hand, and an old uneducated negro woman, on the other.

It is true that this man undertakes to avoid the flagitious character of this transaction by depreciating the value of the property. His depreciation of the value of the property consists in the fact that he has succeeded in

several other instances which he cites, in putting over similar transactions.

3. We invite the court's attention to the further fact that these memoranda which this appellee says were given to this woman to remind her of her right to redeem, or exercise an option and given to her monthly, are nothing of the sort. This man took from the old woman a straight out deed. She evidently did not understand its legal effect. It did not make any difference what was said in her presence. There was no element whatever of *aggregatio mentium,* which makes a binding contract.

At the same time that he took this deed from this old woman, he gave her a receipt which appears at the top of page nine of the record. The deed is on page eight. They were both executed at the same time; they are part of the same transaction; each is part of the other, and instead of that memoranda being a statement to the old woman that she could exercise an option it was a receipt for a contract. The word "contract" in here must be construed as referring to the deed; was a receipt for a contract to be returned to M. M. Lee or bearer, on the payment of eighteen dollars and seventy-five cents on or before a day stated, and the paper contains an express stipulation fully set forth, that if that eighteen dollars and seventy-five cents was not paid on the day stated, the consequence should be, not that the woman should lose her land by virtue of the deed which she had executed; not that the right to exercise the option which is claimed to have been extended to her should lapse; but that then Mr. Wilkinson without making any demand on her, should put up and sell said property at either public or private sale, and at such sale might purchase the same for himself.

It is said that obviously it was not intended by this paper to stipulate that he might put up and sell the deed. We agree to that. What is referred to as that which might be put up and sold, is the land which the deed purported to convey.

There is nothing very singular in this transaction, even putting the color on it the old woman claims. Of course, this old woman is ignorant. She has no conception whatever of the legal bearings of these transactions, but, nevertheless, it remains true that her theory about what happened and what was the intent of the parties, is perfectly consistent with a practice that has existed amongst English speaking people from time immemorial, and that is to pledge a piece of land by a deposit of a deed? It may be a good legal notion, or a bad one, but it is a notion which has always existed, and it would be nothing singular if this old darkey had some sort of an idea moving about in her head that the thing could be done that way. Even if she had understood that this was a deed.

Looking at this transaction, we submit to the court that it is a manifest fraud, and should be set aside, and this old woman should have her homestead lot back.

*T. M. Evans* and *R. F. Langston,* for appellant.

Appellee's counsel is incorrect in his conclusion that counsel for appellant has practically abandoned the theory of fraud, for we have insisted on this in our brief. If appellee's counsel is correct in his conclusions of law, then the whole transaction is a fraud on its face. Counsel says that the deed deposited was absolutely valueless in itself, and therefore could not be placed in pawn, and that the pawn-slip could not have referred to the land; then if that was true, the pawn-slips referred to as exhibits "B-H" was a worthless paper and void, and there is nothing in Mississippi more elementary than that the execution of a void paper is a fraud in law; so if these papers executed by appellee referred to as exhibits "B-H" was not what it purported to be and was not a pawnbroker's ticket, and was not such a document as the pawner could not demand the restoration of the property intended to be pawned by her, then it was a void document, and a fraud.

Counsel for appellee insists that it required parol testimony to explain the deed and the pawn ticket referred to as exhibit "A" and exhibits "B-H," and that unexplained, appellant has no standing in court. Counsel here misstated the law; there is no law authorizing such an explanation of the papers as will vary or contradict the written agreement; the law only permits the identification of the papers and such an explanation of the papers and such an explanation of the circumstances under which they were made as will not change the intention of the parties as expressed in the written contract. The appellant has simply attempted in her evidence to identify the papers by parol testimony and to testify to the circumstances under which the papers were executed and delivered, and not to vary the plain intention of the parties as expressed in the contract. It is always competent to prove the execution and delivery of a paper by parol evidence and to identify the paper, but not to contradict · it. Appellant has proven the execution and delivery of the papers referred to as exhibit "A" and exhibit "B-H," and identified them by her own testimony and the testimony of appellee; while appellee has attempted to contradict the papers that he denied in his answer executing and delivering. We insist that these papers, exhibit "A" and exhibits "B-H," constitute either a mortgage or a void transaction; if a mortgage, then "once a mortgage, always a mortgage" (1 Pingrey, 85, sec. 87); if not a mortgage, then a void transaction, and therefore a fraud. (58 Miss. 843; *E. Joseph, et al.,* v. *L. Levi & Co.*)

The prayer in this case is for the cancellation of the deed, if the court believes from the evidence that the appellant has paid the debt, or if mistaken in this, that there should be an accounting and the cancellation of the deed upon the payment of whatever might be found due the appellee. We submit that we are entitled to this release, and, therefore, the decree should be reversed and judg-

ment entered for the appellant or remanded for further hearing.

*D. M. Graham,* for appellee.

The bill of complaint, with needless prolixity, charges that this deed was procured by the appellee through fraud and, if mistaken in that theory, the deed was intended by both parties as a mortgage and not a conveyance of the land in controversy. The chancellor found against the appellant's contention on both, and rendered a decree dismissing the bill of complaint.

As to the first proposition, that the deed was procured through fraud; there is no evidence to support it, and the counsel has practically abandoned that theory and does not contend in their brief that there is any evidence of fraud in the procurement. The testimony of the appellee and of the witness C. V. Williams, who is a disinterested party and a furniture dealer in Gulfport, forever sets the question of fraud at rest, and the chancellor decided that there was no fraud; and unless the chancellor's finding is manifestly wrong on the facts, this court will not reverse.

As to the second proposition, that the deed to the land in controversy was intended by both parties as a mortgage and not an absolute conveyance; we say that the testimony of appellee and the witness C. V. Williams both clearly show that the transaction was a straight out sale by the appellant to the appellee of the land in controversy. The appellee never loaned money on land, but always loaned on personal property and took the property itself as a pledge.

The appellant contends that the oral testimony explaining the formal pawn ticket that was given her by the appellee was incompetent, but without any oral explanation of the pawn ticket, the two papers, the deed and the pawn ticket, would certainly not sustain appellant's contention that the two papers constitute the con-

tract; the pawn ticket in this case is meaningless unexplained; it could not mean anything in this instance except what appellee contends it was intended for, to-wit: to give the appellant a memorandum to the effect that he would let her have her land back within thirty days if she so desired; counsel for appellant certainly does not mean that the deed itself was placed in pawn, because the deed itself was not property and had absolutely no value in itself; so then what was pawned? Certainly not the land, which was not susceptible of delivery in a pawn shop, and certainly not the deed, because it was without value.

The testimony of appellant and the testimony of C. V. Williams both clearly show that appellant and appellees intended this deed as an absolute conveyance and that nothing was said by either at the time of its execution about borrowing any money on the land in controversy; that the appellee called the appellant back after she had started out of the store and told her that he would give her a thirty day option on the land if she wanted it back, and gave appellant a slip of some kind; on this testimony the chancellor found that there was no loan intended, but a straight out deed to the property was intended; and unless that finding is manifestly wrong, this court will not reverse.

It is needless to say that the chancellor who decided this case, is noted far and wide for his sense of right and justice, and that when there is a question of fraud or unfair dealing brought before him, he weighs the evidence as probably no other chancellor in this state does, and in deciding this case, he must have known the appellant, he must have known the appellee and he must have known the witness C. V. Williams. So the chancellor has decided against the appellant on the facts, both on the theory that the deed was procured by fraud, and the theory that the deed was a mortgage and not an absolute deed of conveyance, and his decree should be affirmed.

Another proposition: Under the old law a conveyance absolute on its face could not be shown to be a mortgage; this rule has been changed by section 4783, Code of 1906, to cases where the maker parts with the possession of the property, and where fraud in the procurement is the issue to be tried; the appellant was not in the possession of the land in controversy at the time the deed in controversy was made, and therefore, could not have parted with the possession of the same; the land was vacant and upon the delivery of the deed the constructive possession passed to the appellee, therefore, the appellant not having parted with the possession according to the meaning of that section could not show by parol testimony that the deed was a mortgage; and as before stated there was no testimony to show that the deed was procured by fraud.

COOK, J., delivered the opinion of the court.

Mary M. Lee, the appellant, in common parlance, is a "nigger" woman. M. M. Wilkinson, appellee, a white man, doing business under the euphonious pseudonym "Standard Loan & Pawn Brokerage Company," is what is commonly termed a "loan shark." Mary is illiterate, but not ignorant. She, like many of her class, fell into the maw of the "shark," and the net result of her adventure was the loss of two residence lots in the thriving city of Gulfport, for which she received in return, according to her statement, the munificent sum of fifteen dollars—according to appellee's statement, eighteen dollars and seventy-five cents. This is not all of this interesting story, but is enough to illustrate the point we have to decide. In exchange for the fifteen dollars, or eighteen dollars and seventy-five cents, as the case may be, Mary executed a paper which, on its face, is a warranty deed to the two lots, and which she thought was a mortgage. Besides the money, appellee gave her a printed pawn ticket, which, read in connection with the deed, clearly

evidences a purpose on the part of appellee to loan the money and take the deed as a security for its payment. Whether this deed and pawn ticket constitute a mortgage is not necessary to decide. It is certain that there was a loan, and that the deed was intended as a security for the loan. The overwhelming preponderance of evidence shows that the lots were worth from ten to twenty times more than the sum advanced to Mary.

The learned chancellor decided against Mary, and unless he was manifestly wrong his decree must be affirmed. We have given this record a thorough examination, and have given a fair and liberal construction to all the evidence tending to support the contention of appellee that he bought the land outright, and we find ourselves unable to agree with the chancellor. Taking the evidence of appellee alone about the transaction, coupled with the value of the lots, we could not affirm the lower court without doing violence to what we think are the equities of the case. Having reached this conclusion, we are thoroughly convinced that this appellee is entitled to nothing except the money advanced by him, with six per cent. interest, after crediting appellant with payments made by her. If an accounting should show that appellant has entirely liquidated the indebtedness, the deed should be canceled. If the accounting shows a balance due, the court should direct a commissioner to reconvey the property to appellant upon the payment of such balance.

*Reversed and remanded.*