## BETHEA v. MULLINS

No. 39914 February 13, 1956 85 So. 2d 452

*George B. Grubbs, Noel W. Buckley, J. P. Edwards,* Mendenhall, for appellant.

*Joe A. McFarland, Jr.,* Bay Springs; *James B. Sykes, J. W. Walker,* Mendenhall, for appellee.

HOLMES, J.

On March 23, 1954, the appellant executed to the appellee a deed absolute on its face purporting to convey

and warrant to the appellee, for the recited consideration of $100 cash, forty acres of land described as the SE¼ of the SW¼ of Section 33, Township 10 North, Range 19 West, in Simpson County, Mississippi.

Claiming that said instrument was intended as security for a loan of $100 made by the appellee to the appellant, to be repaid on January 1, 1955, the appellant brought this suit in the Chancery Court of Simpson County to have said instrument declared to be a mortgage and cancelled. A sum sufficient to pay the alleged debt was tendered by the appellant with her bill of complaint and was deposited in the registry of the court. The bill charged fraud in the procurement of the deed and that it was intended as a mortgage to secure money borrowed.

The appellee answered the bill denying the material allegations thereof and averring that he purchased the land and that the instrument in question was intended to be an absolute conveyance, and that pursuant thereto, he went into the possession of the land on the date of the deed and has since remained in possession thereof.

On the hearing of the cause and at the conclusion of the appellant's evidence, the appellee made a motion to exclude the evidence for the appellant and to dismiss the original bill, and the chancellor entered a decree sustaining the motion and dismissing the original bill, and from this decree the appellant appeals.

■■ ■ The rule is well settled that when at the conclusion of the complainant's evidence the defendant moves to exclude the evidence and dismiss the bill, the court should assume as true all facts which the complainant's evidence fairly tends to establish, together with all reasonable inferences to be deduced therefrom. Griffith's Mississippi Chancery Practice (2d. ed.), Sec. 584; Partee v. Pepple, 197 Miss. 486, 20 So. 2d 73; Skrmetta v. Moore, 202 Miss. 585, 30 So. 2d 53; P.S. Realty Company v. Kuhn, 206 Miss. 123, 39 So. 2d 776.

It therefore becomes important that we consider the evidence introduced on behalf of the appellant, who was the complainant below. This evidence shows substantially the following:

The appellant is a member of the colored race and was about 47 years of age at the time of the trial of this cause at the February 1955 term of the Chancery Court of Simpson County. She was residing at the time in Jackson, Mississippi, and had been so residing since about the year 1952. She and her husband were separated. They had formerly lived in Simpson County. On March 23, 1954, the appellant was the owner of forty acres of land in Simpson County, described as the SE¼ of the SW¼ of Section 33, Township 10 North, Range 19 West. Her husband, Adam Bethea, had purchased the land in about the year 1943 for $600. In about the year 1952, Adam Bethea conveyed the land to the appellant for a recited consideration of $100. About six or eight acres of the land was cultivatable, and there was some timber on the land. The land was located about three and a half miles from the Gwinville Gas Field. The land was worth from $800 to $1200.

On the date aforesaid, March 23, 1954, the appellant went to Mendenhall to ascertain the amount of taxes on her land and to arrange to pay the same. She went to the sheriff's office and learned from the appellee, who was the sheriff of the county, that her taxes amounted to $11.10. She then went to the Peoples Bank in Mendenhall where she contacted Mr. Davis, the president and cashier of the bank, and applied for a loan of $100 on the land, which she needed to pay her taxes, some hospital bills and other small debts. She exhibited her deed to Mr. Davis. Mr. Davis told her he would make the loan provided she furnished him a certificate of title and was properly identified. She then returned to the sheriff's office to get the appellee to identify her. She had known the appellee for a number of years and re-

ferred to him as the high sheriff in whom she reposed full confidence. She told the appellee of her conversation with Mr. Davis, and requested the appellee to identify her. There was a telephone conversation between the appellee and Mr. Davis but the record does not disclose what was said. The appellee then took the appellant into his private office and told her he saw no reason for her to spend twenty-five or thirty dollars for a title certificate and he would lend her the $100. The appellee then asked the appellant if she wanted to sell the land and she replied she did not. The appellee then offered her $800 for the land, and in addition thereto, offered to build her a little shack on the back of it "to take care of your chickens for life time." She again advised the appellee that she did not want to sell the land. The appellee then went out of the office with appellant's deed in his hand, and in just a little while, he returned with a paper and placed it before the appellant and directed her to "sign right here." Reposing confidence in the appellee, she signed the instrument without reading it, believing it to be a deed of trust or security for the loan.

After the appellant signed the paper, the appellee gave her his check for $100, and out of the $100 she paid the taxes of $11.10. According to the testimony of the appellant, the loan which she understood she was obtaining from the appellee was to be repaid on January 1, 1955. After the appellee had written his check and given it to the appellant, he tore out the blank check just beneath the check which he had written and he wrote on the back thereof the figures, $100.00, $8.00, and $3.00, making a total of $111.00. This total amount, according to the testimony of the appellant, was the amount which she was to pay the appellee on January 1, 1955, in repayment of the loan. The appellee, testifying as an adverse witness, admitted that this notation on the back of the blank check was in his own handwriting.

This blank check with the notation on the back thereof was produced and introduced in evidence.

On January 1, 1955, the due date of the loan, the appellant went to Mendenhall for the purpose of repaying the money which she had borrowed, according to her understanding, from the appellee. She found that on that date the courthouse was closed, the bank was closed, and the post office was closed, and she was unable to contact the appellee. She therefore returned to Jackson. The second day of January was a Sunday. She returned to Mendenhall on January 3rd for the purpose of contacting the appellee and repaying the loan, and she had with her $120 in cash with which to repay the loan. She went to the courthouse and saw the appellee and made known to the appellee the purpose of her visit, and the appellee advised her that he was very busy collecting taxes and could not talk to her on that day, and told her to come back the next week or some other time. She went to the bank and deposited $120. On the next day, January 4th, she returned to Mendenhall with a view of contacting the appellee and repaying the loan. She withdrew from the bank on that day the $120 which she had deposited in order to make it available for the repayment of the loan. The bank statement was introduced in evidence corroborating the appellant in this respect. She went to the courthouse on January 4th and saw the appellee leaving the building. She inquired of someone in the sheriff's office when the appellee would return and was told that the appellee had gone bird hunting and it was not known when he would return. She went to the appellee's house early in the evening and inquired for him and was then told by a boy in the yard, presumably the appellee's son, that he had gone bird hunting and that it was not known when he was to return. She waited around until after dark and then returned to Jackson, and on the next day, January 5th, she returned to Mendenhall. Becoming disturbed about

the matter, she consulted an attorney. The attorney examined the records and ascertained that the instrument which the appellant said was intended as a deed of trust or security for a loan was in fact an absolute conveyance conveying and warranting the land to the appellee.

On January 3rd, when the appellant first contacted the appellee at the sheriff's office and was told to come back in a week or some other time, the appellee executed a conveyance of the land to a deputy in his office. No consideration was paid for this conveyance. The deputy delivered the deed forthwith to the chancery clerk for record. Very shortly thereafter, however; manifestly sensing some irregularity in the transaction, he went back to the chancery clerk's office and withdrew the deed and tore it up. Thereafter, the sheriff executed a conveyance of the land to his attorney. The revenue stamps on this deed indicated a consideration of from $1,000 to $1,500.

This suit was filed on January 5, 1955, and 19 minutes after the filing of this suit, the attorney to whom the appellee had conveyed the land presented the deed for record. In a short time thereafter, however, the attorney reconveyed the land to the appellee. Before the filing of the suit, a deed was prepared for the appellee to reconvey the property to the appellant, and the appellant requested him to so reconvey the property, offering at the same time to repay the amount which she said she had borrowed. The appellee told her that she was supposed to be back and pay the debt by January 1st, and that he had told her when he let her have the money that if she would repay it by January 1st, he would convey it to her if he wanted to. He further told her that she had failed to contact him on January 1st, and he was, therefore, unwilling to convey the property back to her. The appellee, called as an adverse witness, admitted that he had given her the memorandum of the amount to be paid

on January 1st in the event he decided to convey the property back to her.

The proof for the appellant further showed that in about the year 1952, she had rented the land to a man named Cecil Griffith, who put a fence on it and used it for a pasture. Griffith paid no rent for the land other than the cost of erecting the fence and his promise to look after it to protect it from fire hazards and timber depredations. Later, with the consent and acquiescence of the appellant, a man named Walker used the land for pasturage purposes.

Following the execution of the deed to the appellee on March 23, 1954, there was no change in the possession of the land. The appellant exercised the same control over the land as she had theretofore. The appellee exercised no possession or control over the land and in fact was unfamiliar with the land, not knowing what timber was thereon or the boundaries thereof, as indicated by the proof which showed that shortly before the hearing of this cause he went out in the neighborhood of the land and inquired of one owning land nearby what timber, if any, was on the land and where the boundaries were. The appellee admitted when called as an adverse witness that at the time the deed was executed he told the appellant that upon repayment to him on January 1, 1955, of the sum noted on the back of the blank check given to the appellant, that is to say, the sum of $111, including the amounts $100.00, $8.00, and $3.00, he would reconvey the land to the appellant ''if he wanted to.''

The appellant contends that the evidence introduced on her behalf clearly and convincingly establishes the fact that the deed in question was procured by fraud, and that it was intended as a mortgage, and that the appellant never parted with the possession of the land. We think that the appellant's contention is well founded.

■■■ Section 272 of the Mississippi Code of 1942 pro-

vides that a conveyance absolute on its face may be proved by parol evidence to be a mortgage only, where the maker has not parted with possession of the property conveyed, or where fraud in the procurement of the confeyance is the issue to be tried. This section of the code reads as follows:

"A conveyance or other writing absolute on its face, where the maker parts with the possession of the property conveyed by it, shall not be proved, at the instance of any of the parties, by parol evidence, to be a mortgage only, unless fraud in its procurement be the issue to be tried."

It was competent under this statute for the appellant to show by parol evidence that the deed in question was procured by fraud, and that she had not parted with the possession of the property, and that the deed was a mortgage only.

 We are in full accord with the well established rule relied upon by the appellee that in order to establish fraud the proof must be clear and convincing.

We are likewise in full accord with the principles relied upon by the appellee that there is a presumption of possession in the grantee in a warranty deed, and that the burden of proof is upon the one who seeks to introduce parol proof under the quoted statute to show that the grantor remained in possession. Jordan v. Jordan, 145 Miss. 779, 111 So. 102.

 Under the proof in this case, which in the present state of the record must be accepted as true, it appears that the appellee obtained from the appellant an absolute deed to the 40 acres of land in question, worth from $800 to $1200, under the guise of making her a loan of $100, and having it secured by a mortgage on the land, after he had offered her and she had declined $800 for the land; that she signed the deed by direction of the appellant, believing and intending it to be security for the loan; that he refused to reconvey the land to

the appellant upon appellant's offer to repay the loan; that the consideration in the deed was grossly inadequate; that the appellee endeavored to evade the appellant when she undertook to contact him for the purpose of repaying the loan, and made attempts to convey the land to a third party and vest the title thereto in a bona fide purchaser so as to defeat the rights of the appellant. These facts, accepted as true, inescapably establish fraud in the procurement of the deed.

In dealing with the question of fraud in the procurement of a deed, the courts and textbook writers have laid much emphasis upon gross inadequacy of consideration in the conveyance.

In 16 Am. Jur., Deeds, Section 33, we find the following: ". . . . if the inadequacy of consideration is so glaring as to the stamp the transaction with fraud and to shock the common sense of honesty, a court of equity will intervene. If the consideration is grossly inadequate, equity in any case will lay hold of slight circumstances of oppression, fraud, or duress in order to rescind the conveyance."

In Emmons v. Emmons, 217 Miss. 594, 64 So. 2d 753, the Court said: "Graves testified the land was worth $800. Others testified it was worth from $45 to $50 per acre. In other words, the undisputed testimony is the land was worth from $800 to $1,000. Appellees put on no testimony to contradict that. To put the stamp of approval on this transaction would be to approve payment of $118 for property worth from eight hundred to a thousand dollars. This should not be done if equity can establish a right and enforce a remedy to prevent it."

In Lee v. Wilkinson, 105 Miss. 358, 62 So. 275, the Court, dealing with analagous facts, said: "Taking the evidence of appellee alone about the transaction, coupled with the value of the lots, we could not affirm the lower court without doing violence to what we think are the equities of the case."

Viewing the evidence before us and accepting it as true, as we must in the present state of the record, we are clearly of the opinion that to put the stamp of approval on the transaction here involved would be to do violence to the equities of the case.

Likewise we must accept as true the evidence for the appellant showing that she never parted with the possession of the land. Previous to this transaction, she had rented it to one man for pasturage, and permitted another to use it for like purposes. She retained and exercised the same control over the land after the transaction as she did before the transaction. The appellee never assumed to take possession of the land or to exercise any right of possession or control over it, and in fact did not know the boundaries of the land. As was said in the case of Emmons v. Emmons, supra, in holding that the grantor in that case had not parted with possession: ''He retained and exercised after the transaction the same control over the land as he did before the transaction took place.'' We are of the opinion, therefore, that on the facts before us the burden of proof upon the appellant to show that she did not part with possession of the land was clearly met.

■■ ■ We have accordingly reached the conclusion that the appellant's evidence made out a case entitling her to relief under her bill of complaint, and that the learned chancellor was in error in sustaining the motion to exclude and in dismissing the original bill.

It follows that we must reverse the decree of the court below and remand the cause for a new trial. Sec. 1312, Mississippi Code of 1942; U. S. Realty Sales, Inc. v. Kuhn, et al, 206 Miss. 123, 39 So. 2d 776.

Reversed and remanded.

*McGehee*, C.J., and *Hall, Lee* and *Kyle*, JJ., concur.