199 So.2d 452 (1967)
J.B. LAMPLEY and Ruby Pearl Young
v.
H.W. PERTUIT et ux.
No. 44475.
Supreme Court of Mississippi.
May 29, 1967.
McClendon & McClendon, Jackson, for appellants.
Erwin C. Ward, Jackson, for appellees.
RODGERS, Justice:
This case came to this Court from a final decree of the Chancery Court of the First Judicial District of Hinds County, *453 Mississippi, dismissing the suit of appellants, J.B. Lampley and Ruby Pearl Young, against Mr. and Mrs. H.W. Pertuit.
The appellants' original bill of complaint alleged that a certain warranty deed given by the appellants to appellee, H.W. Pertuit, and acknowledged by Mrs. Pertuit, was given to secure a loan of $400 made to J.B. Lampley by H.W. Pertuit, and was in fact a mortgage, rather than a warranty deed. When it developed that Mrs. Pertuit had no interest in the property, the suit was dismissed as against her. H.W. Pertuit filed an answer and denied that the deed was intended to secure a loan, and alleged that the appellants sold the property therein described to him for $400. The defendant-appellee here, denied that the appellants were overreached in any respect, and alleged that the consideration in the deed was an adequate value of the property.
The testimony shows that J.B. Lampley and Susie Lampley, his first wife, now deceased, purchased a parcel of land ninety feet by one hundred and forty feet on the corner of Corinth and Utica Streets in the City of Jackson, Mississippi, on September 23, 1946, for the agreed price of $600. The property is described as Lot 17 of Block 15 of College Suburb Subdivision, plus a strip of land twenty feet in width along the south side of the lot.
The purchasers constructed a small frame dwelling on the lot, and J.B. Lampley has been living there since they purchased the property.
Susie Lampley died intestate, leaving as her sole heirs-at-law her husband, and Ruby Pearl Young, her daughter by a former marriage.
In October 1963, J.B. Lampley was in financial difficulty. His truck had been seized by Tower Loan Brokers for an unpaid loan. The appellee admitted that J.B. Lampley had sought to borrow money with which to pay the Tower Loan Brokers, or finance company, but denied that he lent him $400. J.B. Lampley claims that the appellee lent him $400 and took a deed as security for the loan, to be repaid at $5 per week. Ruby Pearl Young testified that appellee Pertuit told her he was lending Lampley money. She said: "He told me he was lending him money where he could get his truck out."
This lot was one of the lots comprising a subdivision. The undisputed testimony is that nearby lots, of the same or similar character, had sold at or about the time of the alleged sale to Pertuit, for amounts ranging from $1,650 to $2,000 each.
Real estate experts, having no interest in the case, but who were peculiarly and thoroughly familiar with the property in question and with the sales of other nearby lots in the subdivision, testified that the Lampley property was worth from $1,650 to $2,000.
Pertuit himself said (although he insisted that it was worth no more than $400) that its rental value was $5 per week. This is $260 per year, or an annual rental of more than five-eighths of its value as fixed by him.
After first denying that he had engaged in real estate transactions, Pertuit finally admitted that he had made other purchases of land but said that he only bought it from persons who came to him "in desperation." His veracity on the stand was seriously discredited on cross-examination.
Only one witness was offered to support Pertuit in his claim that the property was worth only $400. This witness agreed with Pertuit that the propery was worth no more than $400 but when he learned that the lot was larger than he thought, he increased his evaluation of the lot to $500.
Pertuit relies substantially  and apparently this was a material factor in the conclusion reached by the chancellor  on the fact that Lampley made payments of $5 per week and that most of the first thirty-three receipts given him by the Pertuits were *454 marked "rent." However, a more significant aspect of the notation on the receipts is the fact that when this notation was called to Lampley's attention by his second wife, he promptly complained to the Pertuits about it and thereafter the remaining receipts, given for his payments, were not so marked. The notation then showed payments to H.W. Pertuit. Lampley apparently owed a finance company approximately $195, secured by a lien on a truck, and it is difficult to believe that he would irrevocably dispose of this property and leave himself homeless in order to redeem the truck. This is especially true since, out of the $400 he was to have received from Pertuit, Pertuit held out $34 for legal work and $5.95 for picking up the truck. After paying the loan brokers the amount due on the truck, Lampley received in cash only $165.05.
The chancellor found:
"There is no doubt that Pertuit's mentality and education are far superior to that of the complainants. Pertuit attended college for about two years, and he is well-versed in trade and commerce, and at least to some extent he understands the intricacies of real estate transactions. The complainants each have about an eighth-grade education, and apparently have done very little toward adding to their rudimentary knowledge of the `Three Rs'."
He also found that the complainants were not weak-minded or incapable of reading or understanding the document which they signed.
Mississippi Code 1942 Annotated section 272 (1956) provides:
"A conveyance or other writing absolute on its face, where the maker parts with the possession of the property conveyed by it, shall not be proved, at the instance of any of the parties, by parol evidence, to be a mortgage only, unless fraud in its procurement be the issue to be tried."
In this case, Lampley and his wife have never parted with the possession of the property and they were living upon it at the time of the trial. Pertuit had never been upon the property at the time of the trial.
In the case of Bethea v. Mullins, 226 Miss. 795, 804, 85 So.2d 452, 456 (1956), this Court approved and adopted a rule stated in 16 Am.Jur. Deeds section 33:
"* * * (I)f the inadequacy of consideration is so glaring as to stamp the transaction with fraud and to shock the common sense of honesty, a court of equity will intervene. If the consideration is grossly inadequate, equity in any case will lay hold of slight circumstances of oppression, fraud, or duress in order to rescind the conveyance."
In the present case, the chancellor's opinion indicates that his decision turned largely upon the testimony of the one expert witness offered by Pertuit. This witness admitted that he had no experience as an appraiser of the type of property involved in this case. He had only looked at the property the day before the trial. He was completely without information as to any sale of comparable property in the vicinity of the Lampley lot with which to support his opinion as to value. During a recess of the trial, this witness attempted to find a record of some such sale or sales, but, upon taking the stand again on resumption of the trial, he still could give only one sale, and that sale involved a lot about a mile away from the Lampley property. This was wholly insufficient to rebut the overwhelming and cogent proof given by the other witnesses and supported by a number of sales of comparable lots in the vicinity of the Lampley lot to the effect that the Lampley lot had a market value of between $1,650 and $2,000.
The chancellor was in error in accepting the value placed upon the property by the "expert" who testified for Pertuit. An examination of this witness' testimony shows that it was not based upon information sufficient *455 to give it such probative force as to overturn the countervailing testimony.
The witness admitted that he was not qualified as an appraiser and had no experience in appraising property such as that under consideration in this case, and his opinion as to the value of the Lampley lot was shown to have no logical substantiation in information of comparable sales. The one sale relied upon was of property so remote from the Lampley property as to deprive his opinion, based upon it, of probative value.
A sale of property for $400 which is capable of providing an annual income of $260, without any improvements having been added, and valued at from $1,650 to $2,000, is grossly inadequate. It is not necessary, in order to entitle Lampley and Young to relief, that they establish actual fraud by the clear and convincing evidence ordinarily required, but, under the circumstances of this case "* * * equity * * will lay hold of slight circumstances of oppression, fraud, or duress in order to rescind the conveyance." 226 Miss. 804, 85 So.2d 456.
While distinguishable in part in certain factual particulars, this conclusion is supported by the holdings of this Court in Bethea v. Mullins, supra; Emmons v. Emmons, 217 Miss. 594, 64 So.2d 753 (1953); and Lee v. Wilkinson, 105 Miss. 358, 62 So. 275 (1913).
As stated in Emmons: "* * * There is no conclusive test to determine whether a deed absolute on its face is a mortgage. Each case must be decided upon its facts and all the surrounding circumstances." 217 Miss. 599, 64 So.2d 755.
This Court is always reluctant to reverse a decree of the chancery court based upon a finding of fact, but when we reach the conclusion that the chancellor is manifestly wrong, we do not hesitate to reverse. Employers Mut. Cas. v. Nosser, 250 Miss. 542, 164 So.2d 426, 168 So.2d 119 (1964); Smith v. Cook, 213 Miss. 876, 58 So.2d 27 (1952).
We think that under the facts in this case the chancellor was manifestly wrong. Therefore the case must be reversed and a decree entered here establishing that the instrument executed by appellants was not, in fact, a deed, but a mortgage only and secured a debt to Pertuit in the amount of $400. The case is remanded for an accounting to establish the unpaid part of that sum, with six per cent interest from the date of the transaction.
Reversed and remanded for further proceedings in accordance with this opinion.
JONES, PATTERSON, SMITH and ROBERTSON, JJ., concur.