507 So.2d 32 (1987)
Hilma West ANDERSON
v.
Evelyn BURT and Clyde Clifton Burt.
No. 55533.
Supreme Court of Mississippi.
April 15, 1987.
*33 Mark S. Howard, Bishop & Howard, Waynesboro, for appellant.
Polly J. Covington, Quitman, for appellees.
En Banc.
ROBERTSON, Justice, for the Court:

I.
Today's appeal is presented by a mother who seeks to void an eleven year old inter vivos gift of land she made to her daughter some eleven years earlier. The mother proceeded below on two theories: (1) breach of fiduciary duties arising out of a de facto confidential relationship and (2) fraud. The Chancery Court held for the daughter on both issues, largely upon the predicate of factual findings. Having in mind familiar limitations upon our scope of review of fact questions resolved in the trial court, we affirm.

II.

A.
Today's battle regards ownership of 160 acres of land, in Section 32, Township 2 North, Range 17 East in Clarke County, Mississippi. The property is just out of Carmichael in the Junction City community.
The cast of characters includes:
(1) Hilma West Anderson born March 4, 1911, Plaintiff below and Appellant here, the mother and grantor of the deed she here attacks. Hilma possesses an eighth grade education. She married B. Anderson on March 7, 1929, and at that time moved onto the property in dispute. She lived there in a house built in 1916 by her husband and has lived there continuously ever since. B. Anderson died on June 7, 1970.
(2) Evelyn Anderson Burt is the eldest daughter of Hilma West Anderson and B. Anderson. Evelyn is one of the Defendants below and one of the Appellees here and was the grantee in the deed here disputed. Evelyn also lives on the subject property and has lived there for some 25 years.
(3) Clyde Clifton Burt is the husband of Evelyn Anderson Burt. Clyde was the other Defendant below and is the other Appellee here. He lives on the property at issue with his wife Evelyn.
Hilma and B. Anderson had two additional children. First is Clyde Darryl Anderson, their only son. Clyde also lives on the subject property. Clyde lives with Eunice Anderson, although it appears that he is not legally married to her as he has never been divorced from his wife Earline Anderson.
Onie Mae Anderson Kelly, the other daughter of Hilma and B. Anderson, lives in either Clarke or Wayne County, but not on the property in dispute. Onie Mae is not a party to these proceedings.
The 160 acre tract is centered in the south half of Section 32; that is, it consists of the east half of the SW 1/4 and the west half of the SE 1/4 of Section 32. The tract is squared and contains 160 acres.
On June 14, 1960  some eleven years before today's story begins  B. Anderson conveyed the property to his wife Hilma. The deed was not filed for record in the office of the Chancery Clerk of Clarke County until October 14, 1965. It appears that this was in effect a testamentary disposition, with B. Anderson simply wanting to be sure that title to his property was transferred as he wished it to be without leaving anything to chance upon his death. In June of 1970 when B. Anderson died, Hilma was 59 years old. She commenced receiving Social Security benefits at that time.
*34 The deed contested in this civil action was made by Hilma West Anderson on June 29, 1971, and given to Evelyn Anderson Burt. The deed conveyed all of the 160 acre tract to Evelyn. This deed was not placed of record in the office of the Chancery Clerk of Clarke County for some three years, the filing data reflecting that the deed was filed on July 12, 1974, and recorded on July 24, 1974.
In July of 1971 Evelyn was the only member of the family living in Clarke County. The other daughter, Onie Mae Anderson Kelly, had moved away with her husband. Clyde Darryl Anderson was having marital difficulties and was estranged from his mother.
The facts and circumstances leading up to the execution of the 1971 deed are in many particulars disputed. A few points, however, are uncontradicted. First, the property appears to be of some considerable value, at least at the present. The timber only has been appraised at approximately $75,000.00. Moreover, the deed in 1971 was given without consideration. It is valid as a deed of gift or not at all.
Apparently about this time Hilma West Anderson suffered from a variety of physical disabilities, including diabetes, kidney and bladder ailments, cataracts, viscosity, arthritis, cold and flu. There is nothing in the record, however, to suggest that she was experiencing mental or emotional problems at the time. Rather, it appears that she conducted her own business affairs from 1970 until the date of trial.
Hilma West Anderson testified that her daughter, Evelyn, in 1970 and 1971 nagged her to go ahead and convey the property to her. According to Hilma, her daughter wanted a deed so that she could "get started on the rooms I am going to build onto my house to take care of you, because I worry about you being down here by yourself." Evelyn is also said to have told her mother that she should give the deed to Evelyn because, if she did not, when Hilma reached 65 years of age her taxes would be cut in half and if she passed away, her children would have to catch up on the back taxes and would never be able to do so and that they would lose the property. Hilma testified that she found out somewhere around 1975-1977 that this statement regarding taxes was incorrect. The present lawsuit to cancel the 1971 deed, however, was not filed until November of 1982.
On July 29, 1971, Hilma went to the office of A.J. Reese, an attorney in Quitman, Mississippi. She was driven there by her daughter, Evelyn. There Hilma requested Reese to prepare the deed to the 160 acres. On that date she signed that deed conveying all of her interest in the property upon which she had been living since 1929. Reese has little memory of the day's events.
At the time of the execution of the deed, there is no question but that Evelyn, of the three children, was the closest to their mother. Evelyn was the only one living in Clarke County and indeed was living on the same property. Clyde was in and out of Clark County during 1971 but was not living there when the deed was executed. The other daughter, Onie Mae Anderson Kelly, was living in Wayne County at the time with her husband.
There is evidence that Hilma Anderson and her daughter Evelyn had a joint checking account for a number of years, and that this account was terminated in 1982 when Hilma replaced Evelyn's name with Eunice Anderson. It is not clear when this account began or if it was in existence in the 1970-71 period. Also the record reflects that Hilma and Evelyn were parties to a joint savings account for funds which were deposited by Hilma.
During the period following the death of B. Anderson in 1970, one interpretation of the record, the one obviously accepted by the Chancery Court, reflects a relatively normal mother-daughter relationship between Hilma and Evelyn. Evelyn would drive Hilma places, would perform various tasks and errands for her. All of this is quite consistent with the further conclusion that Hilma was mentally and intellectually independent.
*35 The circumstances of Clyde Darryl Anderson are important. Clyde was (and apparently still is) married to Earline Anderson and three children have been born of that marriage. It is not clear when Clyde and Earline broke up, but apparently they were not together in 1970 and 1971 as Clyde was in and out of Clarke County. Thereafter, Clyde was incarcerated in the Leake County Jail from November 14, 1972, through November 12, 1973, for failure to support his children. Clyde resided in Mobile, Alabama, beginning in 1974 and "got together" with Eunice in 1976. In October of 1978 Clyde Anderson and Eunice moved back onto the property in Clarke County and live in a trailer approximately 100 yards from his mother Hilma's house.

B.
The present civil action began on November 9, 1982, when Hilma West Anderson filed her complaint in the Chancery Court of Clarke County, Mississippi. Named as Defendants were Evelyn Anderson Burt and her husband, Clyde Clifton Burt. The complaint sought a final judgment cancelling the 1971 deed and restoring title to the 160 acre tract to Hilma West Anderson. Hilma asserted as theories of her complaint that a confidential or fiduciary relationship existed between her and Evelyn whereupon she was dependent upon Evelyn, and that Evelyn breached the duties thereof in acquisition of the deed. In addition, Hilma claimed fraud in the procurement of the deed.
At trial the Chancery Court heard extensive testimony from Hilma West Anderson, Evelyn Anderson Burt, Clyde Darryl Anderson, Onie Mae Anderson Kelly, as well as a number of other parties, including A.J. Reese, the attorney who prepared the deed. At the conclusion of the proceedings the Chancery Court on August 4, 1983, released its opinion dismissing the complaint and entering the final judgment for Evelyn and her husband. On the fiduciary relationship/undue influence issue, the Chancery Court expressly found
that a fiduciary relationship did not exist between the plaintiff [Hilma West Anderson] and the defendants [Evelyn Anderson Burt and Clyde Clifton Burt] at any time. The testimony is that the plaintiff did have some physical problems after 1970, including diabetes, kidney and bladder ailments, cataracts, viscosity, arthritis, colds and flu. However the testimony is undisputed that the plaintiff did not have any mental or emotional problems and that she conducted her own business affairs from 1970 until the date of trial, although it was necessary for someone to provide her with transportation so that she could conduct her business. The defendants did provide assistance to the plaintiff, especially transportation, but so did Onie Mae Kelly and Clyde Anderson. The plaintiff was not dependant upon the defendants so that the defendants were in a position to exercise a dominant influence upon her.
The Chancery Court also found that Hilma West Anderson had failed to prove her fraud claim. With regard to the alleged statement about back taxes, the Court noted that it was inaccurate but that Hilma learned the truth in about 1974 or 1975 and filed no lawsuit or made no complaint until 1982. With regard to Evelyn's alleged promise to build a room for her mother to live in, the Court noted "that on cross-examination the Plaintiff [Hilma West Anderson] testified that she does not want to nor does she need to live in a house with the Defendants." The Court dismissed the claim of fraud and found further that
an additional factor in the filing of this suit is the actions of the Plaintiff's son, Clyde Anderson. The Plaintiff was not dissatisfied with the conveyance of the 160 acres to Evelyn Burt until this past year when Evelyn Burt refused to comply with Clyde Anderson's request that she convey one-half of the real property to him... . The influence and actions of Clyde Anderson in the filing of this suit are manifest throughout the testimony of the Plaintiff's witnesses.
Finally the Court held that
The execution of the warranty deed on July 29, 1971, by the Plaintiff and the subsequent delivery of the warrant deed *36 to Evelyn Burt in July, 1974, or the Plaintiff's consent for the filing of the warrant deed in July, 1974, were the voluntary and intended actions of the Plaintiff. The Plaintiff had her reasons for conveying the real property to her daughter, Evelyn Burt, and the facts of this case are not such that she should be allowed to change her mind some eleven years later.
In accordance with this opinion, the complaint was dismissed with prejudice. Hilma West Anderson prosecutes the present appeal from the final judgment thereupon entered.

III.
On this appeal Hilma challenges the Chancery Court's holding on both the confidential relationship and fraud issues. In each instance she is confronted at the outset with firmly established limitations upon our scope of review. Whether in July 1971 Evelyn's capacity to dominate her mother was such that a confidential relationship existed in law is a matter of ultimate fact. On questions such as this, we do not reverse where there is in the record substantial evidence supporting the determination made by the trial judge. Norris v. Norris, 498 So.2d 809, 814 (Miss. 1986); Will of Polk, 497 So.2d 815, 818 (Miss. 1986); Culbreath v. Johnson, 427 So.2d 705, 707-09 (Miss. 1983); Richardson v. Riley, 355 So.2d 667, 668 (Miss. 1978). The same ground rules apply to Hilma's appeal on the fraud issue but with increased vigor as there Hilma had the burden of proof by clear and convincing evidence. Norris v. Norris, 498 So.2d 809, 813 (Miss. 1986); Craft v. Craft, 478 So.2d 258, 263 (Miss. 1985); Johnson v. Brewer, 427 So.2d 118, 121 (Miss. 1983).

IV.
Today's appeal proceeds against the backdrop of a facially valid deed which was placed in the land records of Clarke County, Mississippi, in 1974 and remained there unchallenged for some eight years. Courts should not lightly disturb the efficacy of such instruments of conveyance.
On the other hand, where a deed has been procured by one in contravention of duties owed the grantor by reason of a confidential or fiduciary relationship existing in law or in fact, our courts will not hesitate to intervene. Smith v. Estate of Harrison, 498 So.2d 1231, 1233 (Miss. 1986); Murray v. Laird, 446 So.2d 575 (Miss. 1984); Hendricks v. James, 421 So.2d 1031, 1041 (Miss. 1982). In such cases, we recognize a presumption, albeit a rebuttable one, that the conveyance was the product of undue influence exercised by the party owing the duty upon the will of the dependent party. See In Re Will of Launius, 507 So.2d 27, 29 (Miss. 1987); Leggett v. Graham, 218 So.2d 892, 895 (Miss. 1969). Where the party owing the fiduciary duty fails to overcome the presumption by clear and convincing evidence, the court will ordinarily set aside the conveyance. Norris v. Norris, 498 So.2d 809 (Miss. 1986); Kelly v. Shoemake, 460 So.2d 811, 819-20 (Miss. 1984); Murray v. Laird, 446 So.2d 575 (Miss. 1984).
Notwithstanding, an inter vivos gift is a perfectly lawful means of transferring real property in this state. Longtin v. Witcher, 352 So.2d 808, 810-11 (Miss. 1977); Jenkins v. Jenkins, 278 So.2d 446 (Miss. 1973). That power is a necessary incident of our regard for the right an individual enjoys to do with his property as he pleases, subject only to privately imposed restrictions and the state's police power. See Andrews v. Lake Serene Property Owners Ass'n, 434 So.2d 1328, 1331 (Miss. 1983). Common experience teaches that gifts frequently occur between family members, and where a parent has voluntarily given a part of his property to a child we do not interfere, Moore v. Stone, 208 So.2d 585, 586-87 (Miss. 1968); see also Glover v. Glover, 367 So.2d 167, 175-78 (Miss. 1979) even when a confidential relationship is shown, Leggett v. Graham, 218 So.2d 892, 895 (Miss. 1969). Indeed, we have recognized in Thomas v. Jolly, 251 Miss. 448, 170 So.2d 16 (1964) that
A deed from a parent to a child alone and of itself raises no presumption of undue influence, since in the absence of evidence *37 to the contrary, the parent is presumably the dominant party. This is true even though the parent is aged, or aged and infirm.
251 Miss. at 454-55, 170 So.2d at 19. See also Glover v. Glover, 367 So.2d 167, 176 (Miss. 1979); and Moore v. Stone, 208 So.2d 585, 587 (Miss. 1968).
Our law accords greater deference to inter vivos gifts than to Indian givers.
In the case at bar the Chancery Court found that no confidential relationship existed. The Court made a finding of fact that in July of 1971 Hilma "was not dependent upon the Defendants [Evelyn Anderson Burt, et vir.] so that the Defendants were in a position to exercise a dominant influence upon her." This was followed by the Court's further finding that the execution and delivery of the warranty deed "were the voluntary and intended actions of the Plaintiff." These evidentiary findings were the predicate, of course, of the ultimate holding that no confidential or fiduciary relationship existed between the Burts and Hilma West Anderson in July of 1971.
Having in mind the limitations upon our scope of review noted in Section III above, we have examined the record to determine whether there is substantial evidence undergirding the Chancery Court's non-dependency finding. Here the critical finding is that the then 60-year-old Hilma West Anderson was mentally alert in 1971. The evidence reflects that at this point in her life, one year after the death of her husband, Hilma was indeed alert and in control of her faculties and was handling quite competently her own affairs. Much is made in the record of various physical disabilities Hilma experienced. These have been enumerated above. The Court, however, found that these in no way impaired her mental functioning or abilities, a finding we regard as manifestly correct. The fact that Evelyn may have provided her mother with transportation from time to time in no way undercuts the Chancery Court's finding, nor does the fact that Evelyn and her mother may have had a joint bank account.
Considering as we must that the evidence be viewed in light reasonably favorable to Evelyn and that she be given the benefit of reasonable favorable inferences that may be drawn from the facts, this assignment of error must fail. First, there was precedent in the family for making by inter vivos deed of gift what was intended as a testamentary disposition. Hilma's husband, B. Anderson, had given her the property in that manner prior to his death. Moreover, in 1971, a year after B.'s death, the record is clear that Evelyn was the natural object of Hilma's parental affections. By reason of his marital difficulties, upon which, of course, no judgment should be passed, the relationship between Clyde and his mother appears to have been strained in 1971. Onie Mae had moved to Wayne County with her husband and appears to have been in no significant financial need. Moreover, the most powerful evidence of Hilma's mental and emotional independence of any influence by Evelyn lies in the very fact of this lawsuit. Hilma was sufficiently independent of any influence by Evelyn and her husband by 1982 to file this suit. At that time Hilma was 71 years of age. It strains credulity to suggest that, given this state of independence at the age of 71, Hilma was eleven years earlier so dependent upon Evelyn that her will and capacity for independent intellectual functioning was overborne and seduced.
Assignment of Error No. 1 is without merit and is denied.

V.
Hilma next challenges the Chancery Court's rejection of her claim of fraud. Subsidiary to this complaint is her assertion that the Court applied to the fraud claim a clear and convincing evidence burden of proof, a burden Hilma urges was higher than that required by law.
The first point may be quickly disposed of. We have repeatedly held that in a civil action predicated upon fraud the plaintiff is charged to prove her case by clear and convincing evidence. Cherry v. Anthony, Gibbs, Sage, 501 So.2d 416, 420 *38 (Miss. 1987); Craft v. Craft, 478 So.2d 258, 263 (Miss. 1985); Martin v. Winfield, 455 So.2d 762, 764 (Miss. 1984); Johnson v. Brewer, 427 So.2d 118, 121 (Miss. 1983). This burden of proof is a function of the degree of confidence we should have in the correctness of a factual determination that one has perpetrated a fraud. Where the plaintiff's suit seeks to have declared void a facially valid instrument of conveyance which appears of public record, we consider that the public interest requires a high level of confidence in any judicial determination of fraud. See Norris v. Norris, 498 So.2d 809, 813 (Miss. 1986).
The elements of a claim of fraud  which if a plaintiff is to succeed must be proved by clear and convincing evidence  are recited in Johnson v. Brewer, 427 So.2d 118, 121 (Miss. 1983) as follows:
(1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the matter reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance upon its truth; (8) his right to rely thereon; (9) his consequent and proximate injury.
427 So.2d at 121. They have been reiterated most recently in Cherry v. Anthony, Gibbs, Sage, 501 So.2d 416, 419-20 (Miss. 1987).
If we understand it correctly, Hilma alleges that Evelyn caused her to believe that when she became 65 years old her taxes would be cut and that if she died her children would have to catch up on the back taxes which would be difficult for them to do. Hilma says that, because of Evelyn's misrepresentation to her on this subject, she was afraid the property would be sold for taxes and that for this reason she deeded the property to Evelyn.
Assuming arguendo, that the representation was made, the Chancery Court rather clearly rejected any suggested inference that it was made with intent to defraud or that it was the proximate reason for Hilma's executing the deed of gift to her daughter. The Chancery Court found that the conveyance was Hilma's voluntary and intended act and that her claim of fraud fails on the proof. In its opinion the Chancery Court cited Johnson v. Brewer and made it quite clear that the court was aware of the requisites of a claim of fraud. Though not all of the Johnson elements have been expressly addressed, this is one of those cases where we will proceed upon the assumption that the trial court resolved the unmentioned issues consistent with the final judgment. See Day v. Day, 501 So.2d 353, 356 (Miss. 1987); Spain v. Holland, 483 So.2d 318, 320 (Miss. 1986); Kelly v. Shoemake, 460 So.2d 811, 817 (Miss. 1984). Besides, it was only necessary that Hilma's proof fail on one of the nine elements of a fraud claim before the Chancery Court became obligated to dismiss her complaint.
The Chancery Court's opinion offers a further clue to this entire action. For some ten years after the conveyance Hilma expressed no unhappiness with what she had done. She claims that she learned of the falsity of Evelyn's representation about back taxes somewhere between 1975 and 1977 but still she did nothing. She claims that Evelyn was supposed to build a room onto Evelyn's house for Hilma to come and live in, but she makes clear that she has never asked for such and has no intention of living with Hilma and has no need to do so. See Leggett v. Graham, 218 So.2d 892, 894-95 (Miss. 1969) (failure to support in accordance with promise in deed is not sufficient ground for cancellation of deed). Conversely, the present lawsuit has its genesis in the return of Clyde Anderson to Clarke County and to establish his residence in a trailer on the 160 acres in question. The first evidence of any unhappiness with the 1971 conveyance is when Clyde found out about it and requested that Evelyn deed him 80 acres. Evelyn refused. This lawsuit following shortly thereafter. In the words of the Chancery Court: "The influence and actions of Clyde Anderson in the filing of this suit are manifest throughout the testimony of the Plaintiff's witnesses."
Assignment of Error No. 2 is without merit and is denied.
AFFIRMED.
*39 WALKER, C.J., ROY NOBLE LEE, P.J., and PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
HAWKINS, P.J., and DAN M. LEE, J., dissent by separate written opinion.
DAN M. LEE, Justice, dissenting:
The majority opinion in this case holds that no confidential relationship existed between Mrs. Anderson and her daughter, and that there was no fraud in this transaction. Because I would reverse the chancellor below on the standard of proof required on the claim of fraud, I respectfully dissent.
In order to appreciate the instant controversy over the family homestead, it is important to fully understand the relationships and past dealings of the Anderson family members. The conveyance in question was made from Mrs. Anderson to her daughter thirteen months after her husband's death in 1970, at a time when, in addition to her physical ailments, Mrs. Anderson was suffering from a high degree of nervousness and anxiety. Mrs. Anderson does not drive, and, at that time, she was totally dependent upon Mrs. Burt for transportation. According to Mrs. Anderson, Evelyn Burt continually nagged and harassed her about getting a deed to the property. Several other factors were also in operation at that time to convince Mrs. Anderson to convey the land. She had recently inherited some money from her sister's estate, but a large portion of it was taken as taxes. Evelyn, her husband, Clifton, and Clifton's mother told Mrs. Anderson that if she did not make a suitable disposition of her estate, her children would also be faced with a large tax burden. She was not certain whether they were talking about property or inheritance tax, but she was greatly influenced by their argument that it would be better for her to dispose of her property during her lifetime. Mrs. Anderson also desired to receive Social Security disability payments, and she believed that she would have to dispose of her property to do so.
A final concern of Mrs. Anderson in conveying the property was making a suitable disposition in favor of her son, Clyde Darrell. Clyde Darrell has never divorced his first wife, Earline, whom he married in 1966, although they have been separated since 1969. Apparently, during at least a part of the time that the couple has been separated, Earline has been on public assistance. In order to receive welfare payments, she signed papers stating that Clyde was refusing to contribute any support toward the maintenance of his children, and, in 1972, Clyde Darrell was jailed for failure to pay child support. Mrs. Anderson obviously feared that if Clyde were given any part of the property, it might be attached to satisfy his child support debt.
As a result of all these concerns, Mrs. Anderson conveyed the property to Evelyn. As part of this conveyance, Evelyn promised to build a room and a bath onto her house for her mother. Mrs. Anderson also testified that Evelyn promised to hold the property for her brother and sister, and to convey a part of it to them whenever they asked for it. Evelyn vigorously denied this. However, at one point during her testimony she stated, referring to the alleged promise to hold property for Clyde, "Mama said something about if he comes back and acted all right, if he tried to do right."
Between 1974 and 1982, problems developed among the family members. Theola, the daughter of Evelyn Burt, could not get along with her grandmother, Mrs. Anderson. The promised bedroom and bathroom addition to Evelyn's house was never started. Clyde and Eunice Anderson returned to the property in 1976, and Eunice began helping Mrs. Anderson. Clyde Darrell wanted a deed to part of the property, but, apparently, he was reluctant to have it put in his name because of his child support problem. He asked Eunice to go to Evelyn and request a deed to 40 acres of land. According to Evelyn, she did not want Eunice to get any part of the property; however, she did offer to give Clyde 20 acres, in order to see what happened to it. She did not feel bound by her previous discussions with her mother to give Clyde *40 Darrell any of the property because, as she said, "That was the only agreement that was ever made and there wasn't never nothing wrote down on a piece of paper about that agreement." She also testified that she was afraid to deed to Clyde Darrell the 40 acres of property that her mother's house was on, because she was afraid her mother would lose her home. Mrs. Anderson also asked Evelyn for a deed returning part of the property, in order to build a new house on it, but Evelyn refused. Mrs. Anderson stated during the trial that she only wanted 80 acres of the land back  40 acres for herself and 40 acres for Clyde Darrell.
In this case, we have an inter vivos conveyance from a mother to a daughter, supported by no consideration and accompanied by certain unfulfilled promises. The mother, who is still living, feels that the land was obtained by false pretenses, and wants to cancel the conveyance and reobtain part of the property.
In the case of Bethea v. Mullins, 226 Miss. 795, 85 So.2d 452 (1956), the Court dealt with a suit to have a deed cancelled on the ground that it was intended by the grantor as a mortgage. Quoting 16 Am. Jur., Deeds, § 33, the opinion held that "If the consideration is grossly inadequate, equity in any case will lay hold of slight circumstances of oppression, fraud, or duress in order to rescind the conveyance." 226 Miss. at 804, 85 So.2d at 456. In that case, as in the later cases of Lampley v. Pertuit, 199 So.2d 452 (Miss. 1967) and Johnson v. Brewer, 427 So.2d 118 (Miss. 1983), this Court held that fraud need not be proved by clear and convincing evidence, where the consideration for a conveyance is nonexistent, or shockingly low. In those cases, we may seize upon "slight circumstances" showing fraud.
The elements of fraud set out in Johnson v. Brewer are, generally: (1) a representation, (2) which is false, (3) and material, (4) where the speaker has knowledge of its falsity or ignorance of its truth, (5) and intends for it to be acted upon, (6) and the hearer is ignorant of the falsity, (7) relies on its truth, (8) has a right to rely on it, and (9) is proximately injured thereby. Johnson, 427 So.2d at 121. Later in the opinion, retired Justice Broom eloquently outlined the relationship between fraud and inadequate consideration thusly:
Grossly inadequate consideration is not fraud per se, but is germane to the question of the damages incurred by the deceived party. Shockingly inadequate consideration is to fraud as a bad smell is to a putrefying carcass. Just because there is a bad smell in the air doesn't necessarily mean that there is a carcass nearby, but if the smell is bad enough it is strongly suggestive. Similarly speaking, if the consideration in a transaction is grossly inadequate, such inadequacy constitutes a powerful glue which binds together other factors, other pieces of the puzzle which constitutes an overall fraudulent scheme.
Id. at 125.
It appears to this writer that the facts of this case satisfy the elements of fraud as set out in Johnson, particularly when combined with the lack of consideration given for the deed in question. First, we must consider the representation made by Evelyn Burt to her mother, which may be paraphrased as follows: "Taxes are going to eat us alive if you don't convey this property to someone before you die. Convey it to me, and I will build a bedroom and bathroom onto my house for you. In addition, when Clyde Darrell comes back and straightens out his life, I will convey part of the property to him." This representation was false. Evelyn Burt had no knowledge of Mrs. Anderson's estate's potential tax liability, she has never attempted to begin building the promised addition to her house, and she has never intended to be bound by her promise to convey land to Clyde Darrell because "there wasn't never nothing wrote down on a piece of paper about that agreement."
It is clear that these representations were material to Mrs. Anderson's conveyance of the property. She had four reasons to convey the property: to make herself eligible for Social Security benefits, to alleviate her potential tax liability, to preserve *41 some land for Clyde Darrell without putting it in his name, and to have a room and bath built onto Mrs. Burt's house for her use. If she had not been induced by Mrs. Burt's statements, she might have accomplished these ends in another fashion. It is equally clear that Mrs. Burt knew that these statements and promises were false when she made them.
The next four elements of fraud may be discussed together: Mrs. Burt's intent that the representations should be acted upon, Mrs. Anderson's ignorance of their falsity, her reliance on their truth, and her right to so rely. Integral to the discussion is the recognition that Mrs. Anderson and Mrs. Burt were mother and daughter. This was not an "arm's-length-transaction," where each party is charged with taking all steps reasonably necessary to protect his interests. This situation evolved from a family relationship, where each party is entitled to rely, to a great extent, upon the emotional ties that bind them together as a substitute for written contracts and sealed documents. Within the family, it may be presumed that promises will be kept, parents will be honored, and siblings will share.
When this conveyance was made, Mrs. Anderson was a 60-year-old woman who had recently lost her husband. Her health problems had caused her to qualify for Social Security disability payments. She could not drive, and relied on her oldest daughter, the appellant herein, Evelyn Burt, for transportation. She had an eighth grade education, and often discussed her affairs with Evelyn and Evelyn's husband, Clifton. Even if we assume that these facts do not establish a confidential relationship, they still show that Mrs. Anderson trusted her daughter to be concerned with her welfare, as she had every right to do. Under these conditions, I would find that Mrs. Anderson was ignorant of the falsity of Mrs. Burt's representations, that she relied on their truth, and that she had a right to so rely. I would also find, given the closeness of the relationship, that Mrs. Burt was well aware that her mother would act upon her representations.
The last element to consider is whether the representations proximately caused injury. This is perhaps the easiest element to establish in this case. Mrs. Anderson conveyed to her daughter virtually everything she owned in the world when she conveyed the 160-acre homestead. Now she wants some land of her own, so she can build herself a house and convey some property to another child, since her daughter refuses to do so. However, the daughter refuses to give back what was freely given to her. Mrs. Anderson has lost everything to her ungrateful child.
Being equally mindful as the majority of the solemnity of a duly executed deed, I would nonetheless hold that, under the facts of this case, Mrs. Anderson has met the requisite burden of proof to invalidate the conveyance. Indeed, I would hold that her proof went far beyond the "slight circumstances" necessary to show fraud in a conveyance without consideration. Therefore, I would reverse the holding of the chancellor below, cancel the deed to Mrs. Burt, and remand this case for a full accounting.
HAWKINS, P.J., joins this opinion.