PAYNE, J.,
for the Court:
¶ 1. Emma Helena Lednick as adminis-tratrix of the estate of her mother, Allie Marie Hawkins, sought to set aside a deed to Ronald and Mary Shiyou in property located at 113 Central Avenue in Wave-land, Mississippi, and an interest in a mobile home titled to the deceased and Ronald Shiyou. The chancery court denied the administratrix’s request, and this appeal was taken. The issue as stated by the appellant is as follows:
THE LOWER COURT ERRED IN NOT CANCELING THE WARRANTY DEED FROM HAWKINS UNTO SHI-YOU AS WELL AS THE INTEREST OF SHIYOU IN THE MOBILE HOME.
We find no error and affirm the judgment of the Chancery Court of Hancock County.
FACTS
¶ 2. Allie Marie Hawkins died intestate on July 19,1994. At the time of her death, Mrs. Hawkins was eighty-four years old and had been living in a mobile home on property belonging to Mary and Ronald Shiyou, near Bayou Lacroix in Hancock County.
¶ 3. Mrs. Hawkins moved to Bay St. Louis in 1991, after having lived a number of years in Long Beach, Mississippi. In March 1992, she purchased a home at 113 Central Avenue in Bay St. Louis, paying approximately $13,000 for the property. It was at this time that Mrs. Hawkins first met Ronald Shiyou and hired him to help her move into the property on Central Avenue. Mr. Shiyou was hired to do additional jobs for Mrs. Hawkins. A friendship developed between Mrs. Hawkins and the Shiyou family such that in September 1993, Mrs. Hawkins asked the Shiyous if she could put a mobile home next to their property and they agreed.
¶4. Mrs. Hawkins apparently had no relatives in Mississippi. Her granddaughter, who testified at the trial, lived with *434 her in 1983 and 1984 in Long Beach, but Mrs. Hawkins threw her out and never spoke to her again. Mrs. Hawkins’s daughter, Emma Helena Lednick, now executratrix of her mother’s estate, lives in St. Augustine, Florida. Mrs. Lednick last saw her mother in 1991, when Mrs. Hawkins drove herself to and from St. Augustine. Although they talked on the telephone occasionally, the relationship between mother and daughter was strained to say the least.
¶ 5. In the fall of 1993 when Mrs. Hawkins and the Shiyous went to Florida, Mrs. Hawkins went to visit a niece but did not visit or contact her daughter. Mrs. Hawkins refused to give the Shiyous her daughter’s name or telephone number, and they were only able to get the phone number by searching the telephone bills.
¶ 6. In October 1993, Mrs. Hawkins asked Mr. Shiyou to take her to a lawyer. The first law firm they went to did not do land work, and they ultimately went to Robbie Asher, who at Mrs. Hawkins’s request drew up a deed transferring the property on Central Avenue to Mr. and Mrs. Shiyou. Mr. Shiyou paid Mrs. Hawkins $10 in cash for the property.
¶ 7. The Shiyous and Mrs. Hawkins subsequently went on vacation to Florida for which they shared expenses. It was after this time that Mrs. Hawkins moved into a trailer on the Shiyou property. At the time of the purchase of the trailer, Mrs. •Hawkins had the title placed in her and Ronald Shiyou’s name. Mrs. Hawkins paid down $15,000 for the mobile home and financed the rest. Mrs. Hawkins continued to live on the Shiyou property from November 1993 until her death in July 1994.
DISCUSSION
¶ 8. The appellant argues that a confidential relationship existed between Mrs. Hawkins and the appellees, Ronald and Mary Shiyou, such that the warranty deed from Mrs. Hawkins to the Shiyous and the interest in the mobile home should be canceled.
¶ 9. A confidential relationship has been defined by the Mississippi Supreme Court as follows:
Where there is a relationship between two people in which one person is in a position to exercise dominant influence upon the other because of the latter’s dependency upon the former, arising either from weakness of the mind or body or through trust, the law does not hesitate to characterize such a relationship as fiduciary in character.
Madden v. Rhodes, 626 So.2d 608, 617 (Miss.1993). It has long been established that a party claiming undue influence must show by clear and convincing evidence that such a relationship exists. Before the court will scrutinize a person’s right to give away her property such a relationship must be shown, for an inter vivos gift is a perfectly lawful avenue of transferring property in this state. Anderson v. Burt, 507 So.2d 32, 36 (Miss.1987). “When such a confidential relationship exists, the presumption arises automatically, to be rebutted by clear and convincing evidence presented by the one who wishes to uphold the validity of the gift.” Madden, 626 So.2d at 619.
¶ 10. The court found that during the time that Mrs. Hawkins was associated with the Shiyous that she made her own decisions, took care of her own business, did her own shopping, paid her own bills, and even made her own funeral arrangements. The court was not convinced by the appellant’s argument that Mrs. Hawkins’s age, and her “social, domestic and personal” relationship with the Shiyous would indicate the existence of a confidential relationship under Madden v. Rhodes. The court made the following finding:
The Court finds as fact that there appeared to be little or no influence exerted upon Mrs. Hawkins by the Shiyous. There was no competent proof of the decedent’s weakness of mind or body. In fact, her mental capacity was legally *435 attested to by legal settlement just month’s [sic] prior to the contested transfers. Mrs. Hawkins was a woman of great resolve and a woman who demanded that her ways be accepted. If by chance some of her wishes and desires were not complied with she would make a scene, embarrass people and do whatever was necessary to get her way. The Court finds if anything, Mrs. Hawkins exerted undue influence upon the Shiyous. This can be seen not only from the testimony of the Shiyous, but primarily from the testimony of Mrs. Hawkins’ [sic] daughter and granddaughter.
The court found that “even should there have been a fiduciary or confidential relationship found, the presumption of undue influence was rebutted by clear and convincing evidence.”
¶ 11. This Court will not reverse a chancery court’s findings of fact where they are supported by substantial credible evidence in the record. Anderson v. Burt, 507 So.2d 32, 36 (Miss.1987). In other words, this Court will generally affirm a trial court sitting without a jury on a question of fact unless, based on substantial evidence, the court is manifestly wrong. Brown v. Williams, et. al., 504 So.2d 1188, 1192 (Miss.1987).
¶ 12. The uncontroverted testimony in this case was that Mrs. Hawkins was a strong willed woman who knew what she was doing and handled her own affairs up until the time of her death. As the court noted in its findings, Mrs. Hawkins had the mental capacity to settle a law suit against Greyhound in 1993, which was handled by the attorney for the appellant, just months before the transfers in question here. There was no competent evidence that Mrs. Hawkins possessed any lack of mental capacity or weakness of mind or that the Shiyous ever exerted any dominant or overmastering control over Mrs. Hawkins. It is unfortunate that Mrs. Hawkins was estranged from her family, but that did not preclude her from making valid inter vivos gifts to those whom she had befriended. We find no error in the chancery court’s findings and affirm the judgment of the court.
¶ 13. THE JUDGMENT OF THE CHANCERY COURT OF HANCOCK COUNTY IS AFFIRMED. ALL COSTS OF APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C. J., KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, DIAZ, IRVING, AND LEE, JJ., CONCUR.
THOMAS, J., NOT PARTICIPATING.