908 So.2d 883 (2005)
In the Matter of the ESTATE OF Jerry Lee SAUCIER, Deceased.
James Saucier, Executor, Appellant,
v.
In the Matter of the Estate and Last Will and Testament of Jerry L. Saucier, Deceased,
Susan W. Tatum, Executrix, Appellee.
No. 2004-CA-00892-COA.
Court of Appeals of Mississippi.
August 16, 2005.
*884 Prentiss Greene Harrell, Hattiesburg, Matthew W. O'Quain, Michael D. Simmons, Jackson, attorneys for appellant.
Frank D. Montague, Hattiesburg, attorney for appellee.
Before KING, C.J., MYERS and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. This will contest was brought before the chancery court of Forrest County on August, 14, 2003, when the Appellant, James Saucier ("Saucier"), the father of Jerry Saucier, deceased, filed his petition to probate the will in common form. Appellee Susan W. Tatum ("Tatum"), filed *885 her petition to probate a will and letters testamentary of another will purported to be the last will and testament of Jerry Saucier on August 18, 2003. On March 3, 2004, final judgment was entered in favor of Tatum and the will she supported was entered into probate. Aggrieved by this judgment, Saucier appealed. Finding no error, we affirm.

FACTS
¶ 2. The testator, Jerry Saucier ("Jerry"), was thirty-seven years of age at the time of his death on August 9, 2003. His death was the result of congestive heart failure due to alcoholic cardiomyopathy. During his life, Jerry executed two documents which were later produced and submitted to probate. The first will, later propounded by the Appellant, was a holographic document dated January 27, 2002. The second will was a typewritten will dated January 27, 2003, leaving all of Jerry's property, both real and personal, to Tatum. There is no dispute as to the authenticity of the two wills presented for probate.
¶ 3. Under the holographic will the balance of Jerry's estate would have passed to his son, from whom Jerry was estranged at the time of his death. At trial, Saucier challenged the second will put forth by Tatum on the grounds that the will was the product of Tatum's undue influence over Jerry at the time it was executed. The facts presented at trial regarding the close relationship between Tatum and the decedent established that Tatum provided care and assistance to Jerry as his health declined by, for example, cleaning his house and by taking him to detoxification programs and psychiatric appointments. Tatum and Jerry also dated at least one year prior to his death. Testimony at trial illustrated that the pair saw each other every day of the year prior to his death, that they were physically intimate, and that at some point the pair had made plans to marry. Tatum was heavily involved in preparing his will. Tatum located and provided the form used for the second will, and accompanied Jerry to the bank where the instrument was executed. Upon learning that the will had not been properly executed, Tatum brought Jerry to the bank a second time in order to affect a valid execution.
¶ 4. After hearing all testimony in the matter, the trial court found that Tatum "played an instrumental part in seeing that the will was created. . . ." While Jerry admitted to his father that he consumed approximately one-fifth of whisky a day, there was no testimony that Jerry was intoxicated at the time of the preparation and execution of his will. Witnesses from the bank where the instrument was executed provided that they thought Jerry was competent at the time of the execution, and that while present, Tatum did not appear to be an active or interfering force in the execution of the will. The judgment entered by the chancery court found that the will propounded by Tatum was not the result of undue influence, and allowed the document to be entered into probate. Aggrieved by this decision, Saucier asserts the following errors on appeal: (1) whether the chancery court erred in failing to find that the second will was the product of undue influence by Tatum; and (2) whether Tatum failed to rebut the presumption of undue influence by clear and convincing evidence.

ISSUES AND ANALYSIS

I. Whether the chancery court erred in failing to find that the second will was the product of undue influence by Tatum.
¶ 5. Saucier asserts that the trial court erred in failing to find that second *886 will was the product of undue influence. Saucier asserts specifically that the relationship between Tatum and Jerry was confidential and that Tatum was instrumental in the formation of the second will, thereby creating a presumption of undue influence. We begin our analysis of this issue by noting the standard of review. "When reviewing a chancellor's legal findings, particularly involving the interpretation or construction of a will, this Court will apply a de novo standard of review." In re Last Will and Testament of Carney, 758 So.2d 1017, 1019(¶ 8) (Miss.2000). With respect to a chancellor's findings of fact in a will contest, this Court has held that it "will not disturb the findings of a chancellor unless he is manifestly wrong, clearly erroneous, or applied an erroneous legal standard." Goode v. Village of Woodgreen Homeowners Ass'n, 662 So.2d 1064, 1070 (Miss.1995).
¶ 6. "In an action contesting a will, a presumption of undue influence arises where there is a confidential or fiduciary relationship." In re Fankboner v. Pallatin, 638 So.2d 493, 495 (Miss.1994) (citing Mullins v. Ratcliff, 515 So.2d 1183, 1192 (Miss.1987)). "Suspicious circumstances, along with the confidential relationship, also give rise to a presumption of undue influence." Id. (Citing Estate of Lawler v. Weston, 451 So.2d 739, 741 (Miss.1984)). In Croft v. Alder, 237 Miss. 713, 722-23, 115 So.2d 683, 686 (1959), the Mississippi Supreme Court held:
[W]here a confidential relation exists between a testator and a beneficiary under his will, and the beneficiary has been actively concerned in some way with the preparation or execution of it, the law raises a presumption that the beneficiary has exercised undue influence over the testator, and casts upon the beneficiary the burden of disproving undue influence by clear and convincing evidence.
Saucier argues on appeal that a confidential relationship, as well as suspicious circumstances, created such a presumption of undue influence in this case, and that as such, Tatum should have been forced to rebut that presumption by clear and convincing evidence.
¶ 7. The factors utilized by this court to determine whether a confidential relationship existed are as follows:
(1) whether one person has been taken care of by others, (2) whether one person maintains a close relationship with another, (3) whether one person is provided transportation and has their medical care provided for by another, (4) whether one person maintains joint accounts with another, (5) whether one is physically or mentally weak, (6) whether one is of advanced age or poor health, and (7) whether there exists a power of attorney between one and another.
In re Estate of Dabney, 740 So.2d 915, 919(¶ 12) (Miss.1999). In examining factor one, Tatum's own testimony established that she provided assistance and care to Jerry. However, in many instances, despite his alcoholism, Jerry was capable of caring for himself in a manner common to functional alcoholics. Because the parties saw each other on a daily basis, were physically intimate, and had made some generalized plans to marry, these facts clearly indicate that a close relationship was maintained between Jerry and Tatum in regards to factor two. While Tatum did provide transportation for Jerry, most notably during the formation of the will, this was mostly due to the fact that Jerry's license had been suspended. There is some evidence to suggest that Tatum transported Jerry to a handful of psychiatric appointments, and provided other more generalized assistance as considered by *887 factor three. As to factor four, there is no evidence to suggest that Jerry and Tatum held joint accounts, although we note that Jerry entrusted Tatum with the keys to his safety deposit box. As to factor five, Jerry was physically ravaged by his alcoholism. However, whether Jerry was mentally weak presents a closer question. Saucier asserts on appeal that Jerry's liquor consumption, and a past incident where police were called to his home after a bout of hallucinations evidences Jerry's weakened mental state. Saucier also claims that Jerry "badly mismanaged" some apartments owned by his father. Finally, Saucier cites the statement of Jerry's psychiatrist who observed that he was "shaky, tremulous," and that Jerry "just seemed uncomfortable."
¶ 8. Tatum has put forth ample evidence to indicate that Jerry was fully capable of conducting his own affairs, was able to manage his own business and employees, and for the most part was competent to handle his own affairs. In fact, his own psychiatrist, Shannon Johnson, stated that Jerry was "in his right mind." Although Jerry evidenced specific instances of mental weakness, the weight of the evidence mitigates against finding that he functioned within a continually weakened mental state. As to factors six and seven, we note that Jerry was in a weakened physical state, and that no power of attorney was granted to Tatum by Jerry.
¶ 9. Taking all of the Dabney factors as a whole, it is clear that the relationship between Jerry and Tatum was confidential in nature. Furthermore, the chancellor found that Tatum was "a moving force" in the creation of the second will. The confidential relationship of the parties and Tatum's role in the creation of the will suffice to create a presumption of undue influence. Furthermore, according to Croft, Tatum's status as a beneficiary under the will further bolsters this presumption. Croft, 115 So.2d at 686. Saucier is correct in stating that the chancellor failed to make any mention of this presumption within his judgment. However, this failure to state this presumption within the judgment or elsewhere in the record may not, in and of itself, compel us to hold that the chancellor committed reversible error. "Even where the specific basis of a decision is not stated in the chancellor's opinion, the decision will not be disturbed if substantial evidence can be found in the record." M.C.M.J. v. C.E.J., 715 So.2d 774, 777(¶ 20) (Miss.1998). It is apparent from the chancellor's opinion that all of the requisite Dabney factors were considered within his deliberative process. Although the chancellor did not specifically state that a presumption of undue influence arose, substantial evidence of such can be found to support, at the very least, his consideration of the matter. We cannot say that the chancellor committed manifest error in his factual findings, and further hold that any legal error by the chancellor in this regard constitutes harmless error. We therefore must affirm the chancellor as to this issue.

II. Whether Tatum failed to rebut the presumption of undue influence by clear and convincing evidence.
¶ 10. Saucier asserts in his second assignment of error that Tatum failed to rebut the presumption of undue influence. In the case sub judice, due to the fact that the circumstances give rise to a presumption of undue influence, the burden off going forward with the proof shifted to Tatum to prove by clear and convincing evidence that (1) Tatum acted in good faith in the confidential relationship with Jerry;
(2) Jerry acted with full knowledge and deliberation of his actions and their consequences when he executed the second will; and (3) that Jerry exhibited independent consent and action. Murray v. Laird, 446 *888 So.2d 575, 578 (Miss.1984) as modified by Mullins v. Ratcliff, 515 So.2d 1183, 1193 (Miss.1987).
¶ 11. To determine whether Tatum acted in good faith, we must examine the facts surrounding the procurement of the second will. It is undisputed that Tatum was instrumental in the drafting of the will. However, she and Jerry worked together in this regard, and her role in drafting the will is not alone determinative of bad faith. Numerous disinterested persons witnessed the signing of the will. The first subscribing witness to the will, Teressa Rogers, an assistant manager at the bank, testified that she questioned Jerry regarding whether the will represented his wishes, and whether he wanted to sign the document. She further testified that Jerry answered both questions in the affirmative, and that Jerry appeared to be in his right mind and was not intoxicated. The testimony of the second subscribing witness, Jacque Forrester, was not heard as the parties stipulated that his testimony was merely corroborative of the testimony of Rogers. "Secondly, the place of the execution of the will and the persons in whose presence the will was executed are significant." In re Will of Fankboner, 638 So.2d at 496. The second will of Jerry Saucier was executed in the open at a branch of the Union Planters Bank before two disinterested subscribing witnesses and a notary public. "The third and fourth factors are the consideration/fee that was paid and the identity of the person who paid the fee." Id. In this case, no consideration or fee was paid in the drafting of the will. The fifth and final factor that should be considered to determine the "good faith" of Tatum is the secrecy and openness given the execution of the will. Id. The evidence before us is clear that the execution of the will was open and well observed. We therefore find substantial evidence that supports a finding that Tatum acted in good faith.
¶ 12. We now turn to the question of whether Jerry acted with full knowledge and deliberation of his actions and their consequences when he signed the will. The testimony of the subscribing witnesses is again pertinent in this regard. All of the testimony provided regarding the signing of the will at the bank indicated that Jerry was acting in accordance with his own wishes and of his own volition. There is simply scant evidence to conclude that Tatum abused her relationship with Jerry either by asserting dominance over him or by substituting her intent for his. See In re Estate of Sandlin v. Sandlin, 790 So.2d 850, 854(¶ 9) (Miss.Ct.App.2001) (discussing the level of influence that must be exerted over a testator in order for the court to find undue influence). As to the third factor established in Murray, we must determine whether Jerry exhibited independent consent and action. The evidence in this case is legion toward establishing that Jerry exhibited independent consent and action, and that the second will represents his final wishes independent and free from of any undue influence by Tatum. The evidence sub judice is clear and convincing in establishing that Tatum did not substitute her will for Jerry's, and any presumption to the contrary is clearly rebutted in accordance with the requirements of Murray. This assignment of error is without merit.
¶ 13. THE JUDGMENT OF THE CHANCERY COURT OF FORREST COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, GRIFFIS AND BARNES, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.