KING, C.J.,
for the Court.
¶ 1. On September 1, 1998, the will of Tetta Green Thornton was offered for probate in the Chancery Court of the Second Judicial District of Hinds County. Tetta’s estate was being administered in accordance with her will, dated February 9-, 1995, which provided that her estate was to be divided equally among her four living children, when a subsequently executed will was discovered. The subsequent will left forty acres of real property, nearly all of Tetta’s estate, to her grandson Samuel Thornton. The second will was offered and accepted for probate. Tetta’s son, Johnny Thornton, appeals that decision raising the following issue:
I. Whether the April 28, 1995 will of Tetta Green Thornton was executed under undue influence.
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. Tetta Green Thornton suffered a stroke in 1992 and was also blind due to glaucoma. Tetta relied primarily on the help of her daughter Ethel Thornton Williams, Samuel’s mother, to pay her bills, drive her wherever she needed to go, and generally assist her around the house. In 1994 Tetta acquired forty acres of real property located in Raymond, Mississippi from her sister, Margaret Braxton. On February 9, 1995, Tetta executed a will in which she left all of her belongings to her four children to be divided equally. Although the will specified that Tetta was the owner of one-half acre of land upon which her house was situated, it was silent as to the forty acres. On December 9, 1997, Tetta quitclaimed the forty acres to herself and her grandson Samuel as joint tenants with rights of survivorship. Tetta died just seven months later on July 30, 1998.
¶ 4. During the administration of Tetta’s estate, Johnny petitioned the court to set aside the deed from Tetta to Samuel, claiming that the deed was a product of Samuel’s undue influence. On February 18, 2000, an evidentiary hearing was held. Several of Tetta’s relatives testified that prior to Tetta’s death she spoke of being tricked out her land by Samuel. Several witnesses testified that Samuel drove Tet-ta to the courthouse under the pretext of *852 signing some documents so that he could share some land with her that he had independently acquired. When Johnny discovered the existence of the quitclaim deed, he asked his mother why she “signed all her property away.” According to Johnny and other witnesses, Tetta was devastated when she discovered that Samuel held her forty acres as a joint tenant, and pleaded with Johnny to help her get her land back. Samuel denied these allegations at the hearing, but the Court found that the deed was the product of undue influence and set it aside.
¶ 5. On June 22, 2001, Samuel filed a Motion for Relief from Orders in which he sought to have a will of Tetta’s dated April 28, 1995 probated. This will also did not specifically refer to the forty acres. It differed from the previous will in that the subsequent will provided that her house and the one-half acre upon which it was situated were to be divided equally among each of her four children and Samuel. Also, the remainder of her estate was bequeathed and devised to Samuel. A hearing on Samuel’s motion for relief was held in which only Samuel and William Single-tary, the attorney that prepared Tetta’s April 28, 1995 will, testified as to the circumstances surrounding the execution of the will. The court ruled that the April 28, 1995 will was the valid last will and final testament of Tetta, and ordered that it be probated.
DISCUSSION
¶ 6. This Court will not disturb a chancellor’s findings of fact in a will contest unless the findings are clearly' erroneous, manifestly wrong, or the chancellor applied an incorrect legal standard. In re Estate of Saucier, 908 So.2d 883, 886 (¶ 5) (Miss.Ct.App.2005). Questions of law, however, are reviewed de novo. Id.
¶ 7. In his appellate brief, Johnny relies heavily on the fact that the quitclaim deed from Tetta to Samuel was ruled to be the product of undue influence and was set aside. However, the execution of the deed and the surrounding circumstances took place in December 1997. The will that is the subject of this appeal was executed more than two years prior on April 28, 1995. Furthermore, at the hearing on Samuel’s motion to have the subsequent will probated, only Samuel and Singletary testified as to the events surrounding the execution of the subsequent will, and both witnesses’ testimony supported a finding that the will in question was valid.
A will will be set aside as invalid if the court finds that it is the product of undue influence. [WJhere a confidential relation exists between a testator and a beneficiary under his will, and the beneficiary has been actively concerned in some way with the preparation or execution of it, the law raises a presumption that the beneficiary has exercised undue influence over the testator, and casts upon the beneficiary the burden of disproving undue influence by clear and convincing evidence.
Saucier, 908 So.2d at 886 (¶ 6) (quoting Croft v. Alder, 237 Miss. 713, 722-23, 115 So.2d 683, 686 (1959)). Alternatively, a contestant may prove the existence of a confidential relationship coupled with suspicious circumstances surrounding the making of the will. Id. (quoting In re Will of Fankboner v. Pallatin, 638 So.2d 493, 495 (Miss.1994)). “A confidential relationship exists when a dominant over-mastering influence controls over a dependent person or trust, justifiably reposed.” In re Estate of Dabney, 740 So.2d 915, 919 (¶ 12) (Miss.1999). The factors used to determine whether a confidential relationship existed between the testator and beneficiary are:
*853 (1) whether one person has to be taken care of by others,
(2) whether one person maintains a close relationship with another,
(3) whether one person is provided transportation and has their medical care provided for by another,
(4) whether one person maintains joint accounts with another,
(5) whether one is physically or mentally weak,
(6) whether one is of advanced age or poor health, and
(7) whether there exists a power of attorney between the one and another.

Id.

¶ 8. In examining the factors to be considered in determining the existence of undue influence, the testimony revealed that Tetta was taken care of by others, primarily, her daughter Ethel. However, no one alleged that Ethel unduly influenced her mother to make the will. Second, Samuel testified that he had a close relationship with his grandmother; he talked to her on the phone and visited whenever he came to Raymond. However, Samuel has lived in Virginia since the late 1980s. Third, Ethel provided Tetta with transportation, but again, Ethel was not accused of undue influence. Fourth, no evidence was presented to establish whether Tetta maintained a joint bank account with anyone. Fifth, the testimony revealed that Tetta’s physical health was compromised due to a stroke and that she was practically blind due to glaucoma. However, the testimony revealed that her mental state was unimpaired. Sixth, Tetta was seventy-eight years old at the time she executed the second will. Finally, no evidence was presented to establish that Tetta had designated a power of attorney.
¶ 9. The chancellor stated in his order admitting the second will for probate that the will was the product of the free will of Tetta and not the result of undue influence on the part of Samuel nor anyone else. Since the record of the hearing to determine the validity of Tetta’s second will does not support a finding of a confidential relationship between Tetta and Samuel, we cannot say that the chancellor was manifestly wrong in finding that no undue influence existed.
¶10. THE JUDGMENT OF THE HINDS COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.