CARLTON, J.,
for the Court:
¶ 1. Thomas Vincent appeals the Pearl River County Chancery Court’s judgment setting aside the November 8, 2004 deed to property in Pearl River County, Mississippi, from Shannon Creel. Vincent also appeals the chancellor’s decision to place the property in a constructive trust to be held by Creel’s estate. Finding error, we reverse and render the chancellor’s judgment.
FACTS
¶ 2. In 1997, Creel resigned from her job due to the debilitating effects of diabetes. Creel’s condition deteriorated to the point that her vision became severely impaired, and she required kidney dialysis. When Creel became unable to drive or adequately care for herself, she moved into her mother’s residence and granted her moth *861 er, Beverly Stockstill,[1] power of attorney over Creel’s day-to-day affairs.
¶ 3. Creel owned property in Pearl River County, referred to as the Henley property. As a result of her illness, Creel attempted to sell the property. The new owners eventually proved unable to make payments, and Creel regained title and possession of the property. During this time, the property fell into a state of disarray, and Creel hired a contractor to make repairs. In her deposition, Creel testified that the contractor ultimately defrauded Creel out of approximately $10,000.
¶ 4. On September 1, 2004, Creel quit-claimed the Henley property to Stockstill, in an effort to protect the property from creditors. Vincent, Creel’s friend since 1996, offered to repair the property in return for rent-free use and occupancy of the property. Stockstill agreed to deed the land to both Creel and Vincent on October 18, 2004, as joint tenants with right of survivorship. Without any written or other documentary evidence to support her assertion, Stockstill claimed that she conveyed the property to them with the understanding that Vincent would convey the property back to Creel, solely in her name, at any time Creel requested. Creel later executed a quitclaim deed to her share of the joint interest in the Henley property to Vincent, the other joint tenant, on November 8, 2004.
¶ 5. Vincent lived in a home on the Henley property from 2004 until 2006, when Creel approached Vincent and asked him to trade the property back to Stockstill in return for a one-half interest in a home owned by Stockstill. Vincent refused. On September 18, 2006, the Pearl River County Sheriffs Department arrested Vincent on the charge of fraud against a disabled person. Creel and Stockstill then filed a complaint to void Creel’s November 2004 deed to Vincent, alleging that Vincent had fraudulently coerced Creel to convey her property to Vincent with no consideration. Vincent responded with an answer and a counterclaim, seeking damages as a result of Creel’s and Stockstill’s actions. On August 28, 2008, Creel filed an amended complaint seeking to void the quitclaim deed.
¶ 6. Creel passed away prior to the trial held in the Pearl River County Chancery Court, but the chancellor admitted Creel’s videotaped deposition into evidence. After the trial, the chancellor found that a confidential relationship existed between Creel and Vincent. The chancellor further found that Vincent failed to rebut the showing of undue influence. The chancellor voided Vincent’s title to the property and determined that the property should be held in a constructive trust by Creel’s estate.
¶ 7. Vincent filed a motion to reconsider or, in the alternative, a motion for a new trial. The chancellor denied his motion and entered a final judgment setting aside the quitclaim deed from Creel to Vincent due to undue influence and fraud. On appeal, Vincent raises the following assignments of error: the chancellor erred in setting the deed aside based on undue influence and fraud; the chancellor erred in establishing a constructive trust for Creel’s property; and the chancellor erred in changing the substance of his final judgment in response to Vincent’s motion for reconsideration or, in the alternative, a new trial without allowing Vincent a chance to put on proof and rebut the new ruling of modification pursuant to Mississippi Rule of Civil Procedure 59(e). Vincent also claims the chancellor’s final judgment is so vague that Vincent cannot understand which deed the chancellor is setting aside. Finding error, we agree.
*862 ¶ 8. Based on our review, we find the chancellor erred in establishing a constructive trust for the property at issue. We also find that when the chancellor voided Vincent’s title to the property and set the deed aside due to undue influence and fraud, the chancellor failed to distinguish between the two relevant but distinct conveyances between differing parties — one of which established the pre-existing joint ownership prior to the quitclaim deed from Creel to Vincent that was allegedly the result of undue influence.
STANDARD OF REVIEW
¶ 9. A chancellor’s findings “are subject to an abuse-of-discretion standard of review.” Carlisle v. Allen, 40 So.3d 1252, 1256 (¶ 20) (Miss.2010) (citing Barton v. Barton, 790 So.2d 169, 175 (¶ 17) (Miss.2001)). “This Court will not disturb a chancellor’s findings of fact in a will contest unless the findings are clearly erroneous, manifestly wrong, or the chancellor applied an incorrect legal standard.” In re Estate of Thornton v. Thornton, 922 So.2d 850, 852 ( ¶6) (Miss.Ct.App.2006). However, we apply a de novo standard of review to a question of law. Id.
DISCUSSION
¶ 10. Vincent argues that no evidence appears in the record to support the chancellor’s finding that he defrauded Creel or that he had any undue influence over Creel. Vincent also claims that no evidence existed to support the finding that Creel lacked any mental or physical capacity at the time she deeded her interest in the Henley property to Vincent. We disagree. Creel presented sufficient evidence to show a confidential relationship existed between Creel and Vincent. Thus, the chancellor’s decision to void the November 2004 quitclaim deed between Vincent and Creel is supported by substantial evidence. However, we find that although the chancellor properly set aside Creel’s November 2004 quitclaim deed to Vincent, Creel’s share of the property would nonetheless revert to Vincent, as the surviving joint owner, upon Creel’s death as a consequence of the pre-existing joint tenancy conveyed to Vincent and Creel by Stocks-till. In re Will and Estate of Strange v. Strange, 548 So.2d 1323, 1327-28 (Miss.1989). Therefore, we reverse the chancellor’s judgment which placed the property at issue in a constructive trust to be held by Creel’s estate, and we render a judgment recognizing Vincent as the sole owner of the property at issue.
¶ 11. We first turn to examine Vincent’s claim that the chancellor erred in voiding the November 2004 quitclaim deed between Vincent and Creel after a finding of undue influence over Creel. In establishing the validity of an inter vivos gift, the Mississippi Supreme Court has enumerated several factors to consider in determining whether a confidential relationship exists:
(1) whether one person has to be taken care of by others, (2) whether one person maintains a close relationship with another, (3) whether one person is provided transportation and has their medical care provided for by another, (4) whether one person maintains joint accounts with another, (5) whether one is physically or mentally weak, (6) whether one is of advanced age or poor health, and (7) whether there exists a power of attorney between the one and another.
In re Estate of Dabney, 740 So.2d 915, 919 (¶ 12) (Miss.1999). If the chancellor finds that a confidential relationship exists between the grantee and grantor, the inter vivos gift — here, the deed to the Henley property — is presumptively invalid. In re Estate of Reid v. Pluskat, 825 So.2d 1, 5 (¶ 13) (Miss.2002). “[Ojnce the presump *863 tion of undue influence has been established, the burden of proof shifts to the ... grantee to show by clear and convincing evidence that the gift was not the product of undue influence.” Wright v. Roberts, 797 So.2d 992, 998 (¶ 16) (Miss.2001) (citing In re Estate of Dabney, 740 So.2d at 921 (¶ 20)).
¶ 12. In his April 2, 2010 final judgment, the chancellor applied the factors set forth in In re Dabney to determine whether a confidential relationship existed between Creel and Vincent. We pause to note that the chancellor did not apply these factors to the relationship between Vincent and Stockstill, a grantee and the grantor, respectively, regarding the October 2004 quitclaim deed. As a result, the chancellor did not set aside the pre-existing conveyance of joint tenancy to Vincent and Creel from Stockstill. The chancellor listed his findings as follows:
1. Requirement of Care: [Creel] was forced to leave the work force in 1997 because her vision had become so impaired. She was unable to drive herself, and was forced to move into her mother’s residence so that her mother would be able to care for her as her condition continued to deteriorate. At the time the deed was executed, [Creel] had lost a substantial amount of her eyesight and was on dialysis for kidney failure.
2. Close relationship: [Vincent] and [Creel] maintained a very close relationship for nine years. Although [Creel] stated in her deposition that the two were never romantically involved, she admitted that their relationship did result in at least a few overnight stays at one of [Creel’s] residences. Sometimes these overnight stays would last up to three days.
3. Providing Transportation and Medical Care: [Creel] had not been able to drive herself since 1997. She relied on others to drive her to places, including medical appointments. She was also very vulnerable and afraid of creditors, to the point that she began deeding her property to her mother for fear that she would be unable to pay her rising medical bills. In fact, [Vincent] had picked her up and driven her to the undisclosed location where [Creel] signed the deed conveying the property to him.
4. Maintaining Joint Accounts: [Vincent] and [Creel] never co-habitated, nor did they ever share any joint accounts.
5. Physical or Mental Weakness: [Creel] was sick with kidney failure, nearly blind, unable to drive, and on dialysis at the time the deed to [Vincent] was signed. To compound matters, [Creel] had also recently been scammed by falling victim to contractor fraud, which resulted in a financial loss to her of approximately $10,000. She was desperate at the time of the execution, and had trusted [Vincent] completely.
6. Advanced Age or Poor Health: Again, [Creel] had been extremely sick with diabetes, and her condition had continued to deteriorate. As stated above, she was suffering from kidney failure and blindness, among other debilitating ailments resulting from severe diabetes.
7. Power of Attorney: [Creel] granted her mother Power of Attorney over her affairs in the summer of 2004 because she felt she was no longer able to handle her day[-]to[-]day affairs.
The chancellor ultimately determined that the elements evidencing a confidential relationship resulting in the presumption of undue influence between Creel and Vincent were met. We therefore find no abuse of discretion or error in setting aside the November 2004 quitclaim deed from Creel to Vincent. As stated, to overcome the presumption of undue influence, *864 Vincent must show the following: (1) good faith on the part of the grantee/beneficiary; (2) grantor’s/testator’s full knowledge and deliberation of her actions and their consequences; and (3) independent consent and action by the grantor/testator. Wright, 797 So.2d at 999 (¶ 23).
¶ 13. In examining whether Vincent provided enough clear-and-convincing evidence to successfully rebut the presumption, the chancellor held that Vincent had actively participated in the preparation of the deed which conveyed Creel’s share of the Henley property to him. The record before us supports the chancellor’s findings that Vincent failed to show good faith in his actions and indeed intended to defraud Creel. We find the record replete with observations and statements regarding Creel’s extreme health problems and deteriorating condition. Additionally, Creel’s deposition reflects that she never intended to give Vincent a half interest in the Henley property. Creel also stated that Vincent refused to perform any repair work on the home until Creel put the deed in Vincent’s name. Creel explained that Vincent assured her that he would sign the deed back over to her once he completed the repair work.
¶ 14. Additionally, the record reflects that Creel never received any advice from independent counsel, and the chancellor also stated that “[t]here was absolutely no consideration or fee paid for this transaction.” However, in our review of the record, we find that the deed in fact states that Vincent paid the sum of ten dollars’ cash “and other good and valuable considerations” in consideration for the conveyance of the property.[2] The chancellor’s findings of fact show that Creel paid $60,000 for the property at issue — $30,000 for the home and $30,000 for the land. As the chancellor acknowledged, the supreme court has held that “if the inadequacy of consideration is so glaring as to stamp the transaction with fraud and to shock the common sense of honesty, a court of equity will intervene. If the consideration is grossly inadequate, equity in any case will lay hold of slight circumstances of oppression, fraud, or duress in order to rescind the conveyance.” Bethea v. Mullins, 226 Miss. 795, 804, 85 So.2d 452, 456 (1956). The chancellor also noted the suspicious circumstances and conflicting testimony regarding the transaction between Vincent and Creel; as a result, he ultimately held that Vincent failed to rebut the presumption of undue influence. See In re Estate of Thornton, 922 So.2d at 852 (¶ 6). We find no error in the chancellor’s findings with respect to voiding the November 2004 quitclaim deed.
¶ 15. However, we find the chancellor erred in setting aside Vincent’s title to the property after voiding the November 2004 quitclaim deed in which Creel deeded her share of the joint tenancy to Vincent. Although the chancellor voided the November 2004 quitclaim deed, he failed to set aside the pre-existing joint tenancy established by the October 2004 deed. As a result, the prior conveyance in October 2004 from Stockstill to both Creel and Vincent as joint tenants with right of survivorship remained a valid conveyance. This valid conveyance of a joint tenancy, thus, results in Vincent’s sole ownership of the property at issue due to Creel’s death. In re Will and Estate of Strange, 548 So.2d at 1327-28. The chancellor provided no findings that reflected that Vincent defrauded or unduly influenced Stockstill to obtain the October 2004 deed conveying *865 the property to Vincent and Creel as joint tenants. Id. We also find that no evidence of fraud or undue influence between Stockstill and Vincent can be gleaned from the record.
¶ 16. Creel, one of the joint tenants, is now deceased. Our supreme court has reiterated that property held by the decedent in a joint tenancy with right of survivorship is not a part of the decedent’s estate; rather, it passes to the survivor 2011 WL 2536174 upon the decedent’s death. Id.; see also Estate of Roby, 2010-CA-00639-COA, 4 (¶ 11) (Miss. Ct.App. June 28, 2011).[3] Thus, under Mississippi law, upon Creel’s death, her rights passed as a matter of law to the remaining joint tenant, Vincent. In re Estate of Baker, 760 So.2d 759, 761 (¶ 6) (Miss.2000); Oliver v. Oliver, 812 So.2d 1128, 1133 (¶ 17) (Miss.Ct.App.2002). As stated, setting aside the subsequent November 2004 quitclaim deed between Creel and Vincent fails to affect the validity of the previous and distinct conveyance by Stockstill to both Creel and Vincent as joint tenants with right of sur-vivorship in October 2004.
¶ 17. The clean-hands doctrine “prevents a complaining party from obtaining equitable relief in court when he is guilty of willful misconduct in the transaction at issue.” Bailey v. Bailey, 724 So.2d 335, 337 (¶ 6) (Miss.1998). Accordingly, those who use the law to shield themselves from their legal responsibility to creditors or to defraud others cannot then use the law to seek relief. Equity does not provide relief from an undesirable outcome for the practice of circumvention of laws or conveying property to circumvent laws to create a legal facade to circumvent efforts of creditors. The record reflects Creel quitclaimed the Henley property to Stockstill on September 1, 2004, in an effort to protect the property from creditors. The record also shows that Creel granted her mother power of attorney on September 1, 2004, the same day that Creel deeded the property to her mother. By a separate and subsequent conveyance, on October 18, 2004, Stockstill executed a quitclaim deed to both Vincent and Creel, deeding the property to them as joint tenants with full right of survivorship, and now Stockstill on behalf of Creel’s estate, seeks relief from her previous conveyance of the property.
¶ 18. We further find that Stockstill failed to establish proof of a constructive trust upon setting aside of the November 2004 quitclaim deed, since Creel and Vincent already owned the property as joint tenants with right of survivorship. In re Strange, 548 So.2d at 1327-28. Stockstill also failed to show any evidence of fraud, duress, or unconscionable conduct toward her by Vincent affecting the validity of her prior conveyance in October 2004 of the property to Vincent and Creel. We have held that “[a] constructive trust is a fiction of equity created for the purpose of preventing unjust enrichment by one who holds legal title to property which, under principles of justice and fairness, rightfully belongs to another”; equity does not relieve Stockstill of meeting the burden of proving a constructive trust, by clear-and-convincing evidence, due to fraud, undue influence, duress, or unconscionable conduct affecting the validity of her own conveyance of joint tenancy in October 2004 to Vincent and Creel. McNeil v. Hester, 753 So.2d 1057, 1064 (¶ 24) (Miss.2000) (citing Allgood v. Allgood, 473 So.2d 416, 421 (Miss.1985)). We therefore reverse the chancellor’s decision to place the property at issue in a constructive trust to be held by Creel’s estate. See In re Last Will and Testament and Estate of Dunn v. Reilly, *866 784 So.2d 935, 942 (¶ 20) (Miss.2001); Wright v. O’Daniel, 58 So.3d 694, 698 (¶ 21) (Miss.Ct.App.2011). Based on the resolution of this issue, we find no need to analyze Vincent’s remaining issues.
¶ 19. THE JUDGMENT OF THE PEARL RIVER COUNTY CHANCERY COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEES.
LEE, C.J., BARNES, ISHEE, ROBERTS, MAXWELL AND RUSSELL, JJ., CONCUR. IRVING AND GRIFFIS, P JJ., CONCUR IN PART AND IN THE RESULT. FAIR, J., NOT PARTICIPATING.

. Beverly Stockstill and Clinton Creel, Creel’s father, are the appellees in this appeal.

. In his brief, Vincent also claims that he provided the following consideration for the conveyance of the deed: (1) listing Creel as the sole beneficiary of his will, (2) nine years of "being together,” and (3) "doing the things a man does for a woman.”

. This opinion is currently still subject to revision or withdrawal.