ISHEE, J.,
for the Court:
¶ 1. In the late 1990’s, a group of approximately 224 clients were gathered to pursue a class-action lawsuit against a pharmaceutical company for damages suffered from a dangerous product produced and marketed by the pharmaceutical company.[1] Daniel E. Becnel Jr. and the Braddock Law Firm PLLC (Braddock Law), run by Tal Braddock (Braddock), were both associated with the lawsuit. After a successful trial on the merits, P.C. agreed to settle a limited number of the remaining future cases. Attorneys’ fees were distributed to the associated plaintiffs’ attorneys pursuant to a fee-splitting agreement. A dispute arose as to the distribution of fees, among other issues. Braddock filed suit in the Hinds County Chancery Court on behalf of Braddock Law against Becnel and other attorneys associated with the lawsuit for breach of the fee-splitting agreement. After the first trial on the merits was reversed and remanded on appeal,[2] Braddock proceeded with a second trial in 2011. During the trial, Braddock agreed to a settlement with all attorneys other than Becnel. At the close of the trial, the chancery court determined that no contract existed between Braddock and Becnel with regard to attorneys’ fees, and that all other claims against Becnel were without merit. Aggrieved, Braddock appeals. Finding no reversible error, we affirm.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. Becnel, who practiced law in Louisiana, was the originating attorney in this products-liability lawsuit. He associated Michael T. Gallagher and his law firm, which included lawyers in Texas and Mississippi, to bring more claimants into the class-action lawsuit and to try the lawsuit. After a successful trial resulted in a substantial judgment for the plaintiffs, Becnel and Gallagher began settlement talks with P.C. regarding future cases. The negotia *724 tions centered on P.C.’s flat-rate settlement offer on a per-case basis.
¶ 3. Gallagher soon approached Braddock about associating with them in the settlement talks and referring more Mississippi claims that would fall within the purview of the settlement. This would, theoretically, increase P.C.’s settlement offer since the total settlement offer would depend on the number of claims procured. Braddock claims that Gallagher entered into an agreement with him to split the fees, with forty percent going to Gallagher and sixty percent to Braddock. Gallagher admits that an oral agreement on attorneys’ fees was discussed with Braddock, but disputes the percentages.
¶ 4. Based on the sixty-percent-fee promise, Braddock associated Bobby Gill and Richard Martin to assist him in finding claimants they could represent and include in Gallagher’s settlement negotiations. The three attorneys agreed to split Braddock’s sixty-percent fee between themselves, with Gill and Martin receiving fifty-seven percent and Braddock receiving three percent.
¶ 5. After independently researching the specifics of the lawsuit, Gill and Martin became aware of Becnel’s involvement and contacted him to inform him of their fee agreement with Gallagher. By virtue of this conversation, Becnel became aware that P.C.’s offer to Gallagher was more than three times what P.C. had offered to Becnel for his clients. Furthermore, the record reflects that at the time Becnel was not aware of Braddock’s existence or participation in the lawsuit. As such, Becnel entered into a fee-splitting agreement with Gill and Martin to include their Mississippi clients with his clients to present to P.C. for settlement. In turn, Gill and Martin executed an agreement with Braddock to split the attorneys’ fees within thirty days of Becnel’s settlement.
¶ 6. However, Becnel soon breached his agreement with Gill and Martin, and personally met with P.C.’s counsel in an attempt to settle his clients on his own in order to procure the entire attorney fee for himself. P.C.’s counsel informed Bec-nel that Gallagher was the only attorney with whom P.C. was settling clients at that time. P.C.’s counsel also informed Becnel that a close review of the attorney-client documents proved that Gill and Martin had no authority to settle the clients they had referred to Becnel.
¶ 7. Becnel then met with Gallagher and another associating attorney, Tim Goss, regarding the fees. After a few weeks of negotiations, they entered into a written agreement entitling Becnel to sixty percent of the fees and Gallagher to forty percent of the fees. However, the contract only named Goss and Becnel as contracting parties, not Gallagher. P.C. soon settled all claims, including claims from the clients referred by Braddock, Gill, and Martin. When the settlement was finalized a short time later, Goss received the attorneys’ fees and forwarded forty percent to Gallagher and the other sixty percent to Becnel. Gallagher later paid six percent of his forty percent to Goss.
¶ 8. Shortly thereafter, Gill and Martin filed suit in the Hinds County Chancery Court against Becnel for intentional breach of contract in failing to pay them the agreed-upon referral fees. Braddock intervened in the suit and joined Gallagher and his associates as defendants. The chancellor granted partial summary judgment to Gill and Martin for the fees Becnel had promised to them. The chancellor then granted summary judgment to Becnel regarding Braddock’s claim of a three-percent attorneys’ fee. The chancellor held that Braddock could not prove a direct relationship regarding a fee agreement with Becnel. Furthermore, at the close of *725 Braddock’s case, the chancery court granted Gallagher’s motion for an involuntary dismissal.
¶ 9. All parties, even Becnel, agreed that Becnel was liable to someone for the three-percent fee. However, the chancellor determined that Braddock’s only cause of action could be against Gallagher and his associates. Nonetheless, Gallagher was dismissed from the action, leaving Braddock no recourse.
¶ 10. Becnel soon appealed the chancery court’s judgment. This Court reversed the chancery court’s dismissal of Gallagher and his associates, as well as the chancery court’s denial of Braddock’s motion to amend his complaint to include a count of civil conspiracy. Braddock, 949 So.2d at 45 (¶ 23), (¶ 22). We remanded the case for further proceedings on Braddock’s civil-conspiracy claim and gave Gallagher and his associates the opportunity to present their defense. Id.
¶ 11. On remand, the chancery court ordered the parties to submit memorandums, and later held a hearing on all evidence and the memorandums. The chancery court then entered a final judgment determining that Gallagher and Braddock had a binding settlement agreement, but that no civil conspiracy existed between Becnel and Gallagher. Hence, the chancery court dismissed all of Braddock’s claims against Becnel.
¶ 12. Braddock again appeals the chancery court’s judgment, claiming the court erred in the following ways: (1) dismissing Braddock’s joint-venture claim; (2) dismissing Braddock’s civil-conspiracy claim; and (3) failing to award attorneys’ fees and punitive damages. Finding no error, we affirm the chancery court’s judgment.
DISCUSSION
¶ 18. We review a chancellor’s findings under an abuse-of-discretion standard. Vincent v. Creel, 80 So.3d 859, 862 (¶ 9) (Miss.Ct.App.2012) (citation omitted). Findings of fact are not disturbed unless they are “clearly erroneous [or] manifestly wrong, or the chancellor applied an incorrect legal standard.” Id. Nonetheless, questions of law are reviewed de novo. Id.
I. Joint Venture
¶ 14. Braddock claims the chancery court erred in dismissing his claim regarding a joint-venture between his law firm and Becnel. In its memorandum of law, the chancery court stated the following:
With regard to Braddock’s claims against Becnel, the Mississippi Court of Appeals remanded solely on the issue of the amendment of a civil[-]conspiraey claim.... However, out of an abundance of caution, this [c]ourt has reviewed [the joint-venture claim] posed by Braddock. ... Although the Mississippi Court of Appeals did find a joint venture between Braddock, Gallagher, [and other associated attorneys], there is no mention of Becnel as a part of the venture. According to common law, the three main factors of partnership, and by extension joint venture, are (1) intent, (2) control, and (3) profit sharing. Smith v. Redd, 593 So.2d 989, 993 (Miss.1991). In this matter, it is undisputed that Becnel had no intention of joining a venture with Braddock. In fact, Becnel did not even know of Braddock’s existence. Becnel had a limited contract with Gill and Martin. However, his fiduciary responsibilities did not extend to those with whom Gill and Martin had a contract. Therefore, there was no joint venture including both Becnel and Braddock. Further, this Court would note that the Mississippi Court of Appeals specifically affirmed the previous chancellor’s summary judgment in favor of .Becnel as to [the] declaratory action, *726 accounting!,] and breach of contract. Therefore, this [c]ourt cannot readdress those issue which have been specifically-decided and affirmed by the appellate courts.
¶ 15. Indeed, in Braddock, we affirmed the chancery court’s grant of Bec-nel’s summary-judgment motion on the basis that Braddock could not prove a direct relationship with Becnel. Braddock, 949 So.2d at 47 (¶¶ 34-38). We discussed joint-venture relationships in Braddock with regard to Braddock and Gallagher. Id. at 50-52 (¶¶ 45-53). As stated therein, a joint venture is a single-purpose partnership evidenced by intent, control, and profit sharing. Id. at 49 (¶ 46) (citations omitted).
¶ 16. In order to show intent, a movant must establish by the proof that the parties intended to be legally bound to one another for the purpose of reaching a singular goal. See Smith v. Redd, 593 So.2d 989, 994 (Miss.1991). The chancery court found that Becnel was not aware of Braddock’s existence at the time he entered into fee-splitting agreements with Gill, Martin, and Gallagher. The extensive nature of this class-action lawsuit made it feasible for Braddock to operate as a minimally involved referral attorney through his law firm without Becnel’s knowledge. This alone shows that Becnel could not have possibly intended to enter into a binding agreement with Braddock regarding the settlement or the fee-splitting agreement. As stated in Braddock, the evidence .reflected that Gallagher was bound by the agreement with Braddock and the other Mississippi attorneys. However, we see no evidence in the record to tie Braddock to Becnel by virtue of a joint venture or any other contract.
¶ 17. Likewise, as stated by the chancery court, we affirmed the court’s prior dismissal of Becnel “as to [the] declaratory action, accounting!,] and breach of contract.” Braddock, 949 So.2d at 48 (¶ 35). Having determined that Braddock failed to meet the first element of intent, required to establish the existence of a joint venture between himself and Becnel, in addition to our prior ruling affirming the dismissal of Becnel from all breach-of-contract claims, we find this issue to be without merit.
II. Civil Conspiracy
¶ 18. Braddock next argues that a civil conspiracy existed between Becnel and Gallagher to exclude all Mississippi attorneys from the settlement. “Conspiracy requires a finding of[:] (1) two or more persons or corporations; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result.” Gallegos v. Mid-South Mortgage & Inv., Inc., 956 So.2d 1055, 1060 (¶ 22) (Miss.Ct.App.2007) (citation omitted).
¶ 19. The only pertinent agreement in the record involving Braddock was the agreement executed between Braddock, Gill, and Martin providing a fee distribution between the three attorneys within thirty days of Becnel’s settlement. However, while this agreement was contingent on Becnel’s agreement with Gill and Martin, Becnel was only tangentially linked to Braddock by virtue of the two separate contracts. Becnel never agreed to pay Braddock or Braddock Law anything. Rather, he agreed to pay Gill and Martin, who agreed to pay Braddock.
¶ 20. The evidence shows that Becnel became increasingly dissatisfied with Gill and Martin’s performance as the negotiations ensued. Later, Becnel discovered through P.C.’s counsel that Gill and Martin had no legal authority to settle the claims they had referred to him. Because Gill *727 and Martin had failed to fulfill their obligation in the agreement with Becnel, Bec-nel had cause to terminate the agreement. See Shaw v. Burchfield, 481 So.2d 247, 255 (Miss.1985). The Mississippi Supreme Court has stated that “[t]here is no actionable conspiracy ... where all that is shown is the exercise[,] in a lawful manner[,] of a right to terminate a contract.” Id.
¶ 21. Becnel lawfully terminated his agreement with Gill and Martin, which negates an element of conspiracy, which consists of two persons who enter into unlawful activity. Accordingly, whether or not Becnel and Gallagher devised to exclude Braddock and others from the settlement is of no consequence to a conspiracy claim since there was not an unlawful act committed to accomplish their goal. This issue is also without merit.
III. Attorneys’ Fees and Punitive Damages
¶22. Finally, Braddock contests the chancery court’s failure to award attorneys’ fees and punitive damages. However, Braddock’s claim rests upon his assertion that he “has clearly and convincingly proven intentional, tortious, and bad faith breach of contracts as well as civil conspiracy. ...” This argument is completely unsupported by the record. Likewise, Braddock cites no authority for his assertions. We have previously held that “failure to cite relevant authority obviates the appellate court’s obligation to review such issues.” Braddock, 949 So.2d at 47 (¶ 35) (citing Simmons v. State, 805 So.2d 452, 487 (¶ 90) (Miss.2001)). As such, this issue is meritless.
¶ 23. THE JUDGMENT OF THE HINDS COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
GRIFFIS, P.J., BARNES, ROBERTS, CARLTON AND FAIR, JJ., CONCUR. MAXWELL, J., CONCURS IN PART AND IN THE RESULT. LEE, C.J., IRVING, P.J., AND JAMES, J., NOT PARTICIPATING.

. For confidentiality purposes, we will decline to name the pharmaceutical company, and instead will refer to it as ‘'P.C.”

. See Braddock Law Firm, PLLC, v. Becnel, 949 So.2d 38 (Miss.Ct.App.2006).