# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-00368-COA

IN THE MATTER OF THE ESTATE OF            APPELLANTS
MICHAEL CLYDE AMBURN, DECEASED:
STEVEN ALAN MAYS AND SHEILA AMBURN
MAYS

v.

SUSAN ZUMWALT                                       APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 12/21/2018 |
| TRIAL JUDGE: | HON. GLENN ALDERSON |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | LAWRENCE LEE LITTLE |
| | WALTER ALAN DAVIS |
| | TARA BETH SCRUGGS |
| ATTORNEY FOR APPELLEE: | JERRY WESLEY HISAW |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | REVERSED AND REMANDED - 06/02/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

EN BANC.

LAWRENCE, J., FOR THE COURT:

¶1. This appeal involves two conflicting wills executed by Michael Clyde Amburn, the first in 2012 and the second in 2016. The 2012 will named Michael's girlfriend, Susan Zumwalt, as the executrix and stated that she would receive a life estate in his home as well as an equal child's share upon his death. The 2016 will named his son-in-law, Steven Mays, as executor, awarded his daughter Sheila Mays a majority of his estate and removed Susan from the will entirely.

¶2.     The Lafayette County Chancery Court ultimately found that the 2016 will was a product of undue influence, and therefore the 2012 will was Michael's valid last will and testament. Steven and Sheila appealed. Because we find that the chancery court applied an erroneous standard, we reverse and remand for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶3.     At the time of his death, Michael Clyde Amburn had three children, namely Sheila Amburn Mays, Holly Renee Beasley, and Michael Shane Amburn. Steven Alan Mays was married to Sheila Amburn Mays and was the named executor in Michael's 2016 will. Steven and Sheila lived in Texas. Neither of Michael's other two children are parties to this appeal, though Holly testified at the hearing. While Michael was not married, he had a long-term romantic relationship with Susan Zumwalt. Michael and Susan were living together in Michael's home in Water Valley, Mississippi, at the time of his death. On December 9, 2012, Michael executed a will. In the 2012 will, Susan was the named executrix, was set to receive a life estate in the Water Valley property, and was to inherit an equal child's share upon his death.[1] Prior to his death, Michael executed another will, dated August 24, 2016. The two wills were substantially different in content. The 2016 will named Sheila's husband, Steven, as the executor and devised the majority of his estate to Sheila to the complete

---

[1] Michael disinherited his son from any share and stated in the will that his two daughters and Susan would inherit his estate in equal shares.

2

exclusion of Susan. Michael died on June 30, 2017.

### 1. The 2012 Will

¶4. It is undisputed that Michael was hospitalized in late 2012 and was in and out of the intensive care unit ("ICU") at Baptist Memorial Hospital-North Mississippi. He suffered from heart failure, kidney failure, and sepsis. Susan testified that while hospitalized, Michael requested that she contact his long-time attorney, Charles Walker,[2] to prepare a new will for him. Susan contacted the attorney with the provisions for the new will, as she claimed Michael had directed her to do. A new will was prepared by Walker's office and brought to the hospital for Michael to execute. Susan paid for the will preparation but she claimed that Michael paid her back. The will was executed on December 9, 2012. On the previous day, Michael had been in the ICU, but he was in a regular room on the date of execution. He returned to ICU the day after executing the 2012 will. It is disputed who was present in the room at the actual time the will was executed; however, Susan and her son Kirk Zumwalt were present at the hospital, along with Walker and his paralegal, Mary Lynn Lewis. Neither Sheila nor any other family member was present at the hospital at the time that the 2012 will was executed.

### 2. The 2016 Will

¶5. Having somewhat recovered from the ailments that caused the 2012 hospitalization,

---

[2] Charles Walker's office was in Oxford, Mississippi, and he was the personal attorney for both Michael and Susan.

Michael traveled to Texas in August 2016 to testify at a hearing concerning his father's estate. The testimony presented at the trial in the matter was conflicting as to the state of Michael's health during his time in Texas. Michael drove from his home in Water Valley to Canton, Mississippi, where he met his son-in-law, Steven. Steven had an apartment in Canton and regularly traveled from his home in Texas to his apartment in Canton, as required by his employment. Sheila lived at their home in Texas. Steven drove Michael from Canton to his and Sheila's home in Texas, where he remained for the entirety of his stay. After Michael made the trip, the estate court hearing was cancelled. During his stay in Texas, Sheila claimed that Michael requested her help in locating a local attorney to assist him with a real estate matter. Sheila arranged a meeting with an attorney named Eldridge Moak. Sheila claimed that after the appointment regarding the real estate issue, her father requested that she make an additional appointment with the same attorney to prepare a new will. Before his meeting with Moak concerning his will, Sheila claimed that her father asked her to make notes regarding the property distribution to be addressed in the new will. After two appointments with Moak regarding his will, Michael executed the will on August 24, 2016, while in Texas. On the same day, Michael executed a power of attorney naming Sheila as his agent. Sheila drove Michael to all of his appointments with Moak and testified that she was present at the time that he executed his will and power of attorney. Sheila paid for Moak's services for the 2016 will; however, she claimed that Michael reimbursed her in cash. Susan had no knowledge of the 2016 will until after Michael's death. The morning

4

after Michael's death, Sheila arrived in Mississippi at Michael's home and presented Susan with the 2016 will for the first time. Shortly thereafter, Steven began to marshal the estate assets as the executor of the 2016 will and told Susan she had two weeks to move out of Michael's home.

### 3. Proceedings and Disposition

¶6. Steven filed a petition to admit the 2016 will for probate on July 19, 2017. Susan filed her will contest, along with a petition to recover estate property, and request for a temporary restraining order on July 31, 2017. Susan filed an amended petition on September 12, 2017. A hearing was held on May 22, 2018, on the parties' petitions to determine the validity of the wills. At that hearing, the court heard testimony from eleven witnesses, including Sheila Mays, Holly Beasley, Thomas Butch Harris, Susan Zumwalt, Robert Hollinger, Kirk Zumwalt, Carla Joseph, Steven Mays, Eldridge Moak, Mary Lynn Lewis, and Susan Riley. The chancellor issued his findings of fact, conclusions of law, and the court's judgment on December 21, 2018. The chancellor found that the 2016 will was invalid as a product of undue influence and that the 2012 will was valid. Aggrieved by the judgment, Sheila and Steven appealed.

## STANDARD OF REVIEW

¶7. "In reviewing a chancellor's findings, we employ an abuse-of-discretion standard of review." *In re Estate of Necaise*, 126 So. 3d 49, 56 (¶22) (Miss. Ct. App. 2013) (citing *Vincent v. Creel*, 80 So. 3d 859, 862 (¶9) (Miss. Ct. App. 2012)). "This Court will not

5

disturb a chancellor's findings of fact in a will contest unless the findings are clearly erroneous or manifestly wrong, or the chancellor applied an incorrect legal standard." *Id.* "However, when considering a question of law, we employ a de novo standard of review." *Id.*

**ANALYSIS**

¶8.    Both the 2012 and the 2016 wills were contested based on the theory of undue influence. Sheila alleged that Michael was unduly influenced by Susan when he signed the 2012 will while in the hospital. Around the time that the 2012 will was signed, Michael had been in and out of the ICU, suffering from various ailments. Susan contacted Michael's attorney regarding the substance and preparation of the will and paid for it. Susan alleged that Michael was unduly influenced by Sheila when he signed the 2016 will while visiting her in Texas. Sheila made the initial appointment with the attorney, made notes for the attorney, and paid for his services. Further, Michael executed a power of attorney that named Sheila as his agent at the same time that he executed his 2016 will. Both Sheila and Susan claimed that all of their actions were directed by Michael and were reflective of his wishes at the time.

¶9.    "In *Croft v. Alder*, 237 Miss. 713, 115 So. 2d 683 (1959), our supreme court crafted the confidential relationship doctrine applicable to wills contested on the basis of undue influence." *In re Estate of Thomas*, 122 So. 3d 111, 118 (¶34) (Miss. Ct. App. 2013). Our supreme court in *Croft* held that "a presumption of undue influence arises where (1) a

6

confidential relationship existed between the testator and beneficiary, and (2) the beneficiary in the confidential relationship was actively involved in some way with preparing or executing the will." *Id.* Once there has been a sufficient showing of undue influence, the burden shifts to the proponents to rebut the presumption by clear and convincing evidence. *Croft* also set out the requirements to overcome the presumption. *Id*. "In order to overcome the presumption of undue influence, the proponents must show by clear and convincing evidence: (1) the beneficiary acted in good faith; (2) the testator had 'full knowledge and deliberation' in executing the will; and (3) the testator exhibited 'independent consent and action.'" *Id*. at 118-19 (¶34).

¶10. The chancery court held that the issue of undue influence was dispositive and further held that the 2016 will was invalid as a result of Sheila's undue influence over Michael. The chancellor's conclusion does not address the other two theories in which the 2016 will was challenged. In his findings of facts, conclusions of law, and judgment of the court, the chancellor stated that "[t]he fact that Sheila was Mr. Amburn's attorney-in-fact under a power of attorney **alone** allows this Court to find that there exists a confidential relationship; thereby, establishing the presumption of undue influence." (Emphasis added).

¶11. The chancellor misapplied the law in finding that Sheila's power of attorney over Michael alone created a confidential relationship and erred in automatically shifting the burden without sufficient proof of a confidential relationship. The existence of a power of attorney is but one of seven factors to determine if a confidential relationship exists. *Costello*

7

*v. Hall*, 506 So. 2d 293, 297 (Miss. 1987). "These factors include: (1) whether one person has to be taken care of by others, (2) whether one person maintains a close relationship with another, (3) whether one person is provided transportation and has their medical care provided by another, (4) whether one person maintains joint accounts with another, (5) whether one is physically or mentally weak, (6) whether one is advanced age or poor health, and (7) whether there exists a power of attorney." *In re Estate of Lane*, 930 So. 2d 421, 425 (¶13) (Miss. Ct. App. 2005) (citing *Wright v. Roberts*, 797 So. 2d 992, 998 (¶18) (Miss. 2001)). In his ruling, the chancellor relied on *In re Estate of Holmes*, 961 So. 2d 674, 680 (¶18) (Miss. 2007). In *Holmes*, the Mississippi Supreme Court stated that "[a]s all seven of the applicable factors have been met, we find that a confidential relationship clearly existed, and therefore, a presumption of undue influence." *Id*. In this case, the power of attorney was not created during the events leading up to Michael signing the 2016 will but was executed at the same time as the will. Further, the chancellor's ruling was based on only that **one** of the seven applicable factors. The chancellor's misapplication of law prematurely shifted the burden to Sheila and Steven to rebut the presumption of undue influence when, in fact, there should have been a further confidential relationship analysis pursuant to all of the factors set out in *In re Estate of Lane*. By not considering all of the factors and holding that the written power of attorney created at the same time as the 2016 will was sufficient, by itself, to shift the burden of proof, the chancellor essentially applied an erroneous standard of law. Accordingly, we reverse the chancery court's judgment and remand.

8

¶12. The chancellor held that the 2012 will was not the product of undue influence and therefore valid for probate. Given the fact that the chancellor erred in his application of the law pertaining to the validity of the latter 2016 will, we will not further address an analysis of the 2012 will.

**CONCLUSION**

¶13. The chancellor erred in his finding that Michael's 2016 will was invalid as a product of undue influence because all of the factors set forth in *In re Estate of Lane* were not addressed, and the misapplication of one factor was, by itself, insufficient to shift the burden of proof. This Court does not opine which will was or was not the product of undue influence or which one was valid or not under the laws of the State of Mississippi. Those factual determinations are reserved for the chancellor upon the full application of the law. We reverse and remand for proceedings consistent with this opinion.

¶14. **REVERSED AND REMANDED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., WESTBROOKS, McDONALD, McCARTY AND C. WILSON, JJ., CONCUR. GREENLEE, J., NOT PARTICIPATING.**